327 So.2d 436 (1976)
Mrs. Emmett R. FLAHERTY, Plaintiff-Appellee,
v.
GULFCO LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 5371.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1976.
Dissenting Opinion February 19, 1976.
Rehearing Denied March 11, 1976.
Writ Refused April 13, 1976.
*437 Bennett & Wilson by Ben C. Bennett, Jr., Abbeville, for defendant-appellant.
Riddle & Bennett by Charles A. Riddle, Jr. and Darrel Ryland, Marksville, for plaintiff-appellee.
Cravel, Roy & Burnes, by Chries J. Roy and Robert L. Royer, Alexandria, for defendant-appellee.
Before MILLER, WATSON and CUTRER, JJ.
CUTRER, Judge.
Plaintiff, Mrs. Emmett R. Flaherty, brought this action to recover all benefits due on a credit life insurance policy issued for a term of one year in the amount of $10,000.00. The action was brought against Gulfco Life Insurance Company (hereinafter sometimes referred to as *438 "Gulfco"). A third party demand was made by Gulfco against the Mansura State Bank and/or Nathan Ducote. After trial on the merits judgment was rendered in favor of plaintiff against Gulfco. The third party demand was dismissed. Gulfco has appealed from that judgment, and plaintiff has answered the appeal, arguing that the trial court erred in denying her penalties under LSA-R.S. 22:656 as prayed for in her petition. We affirm the judgment of the district court.
The basis of this suit is a policy of credit life insurance written by Gulfco insuring the life of plaintiff's husband, Emmett R. Flaherty, made payable to Mansura State Bank, as first beneficiary, in the amount of $10,000.00. The policy sued on was issued October 3, 1973, with Nathan Ducote, an officer of the Mansura State Bank, acting as agent for Gulfco. The policy was issued in connection with a loan by the Mansura State Bank to plaintiff and her husband in the amount of $9,923.51. The loan was secured by a mortgage on immovable property owned by the Flahertys. A premium of $200.00 was collected from the Flahertys, and a certificate of insurance was filled out by Ducote and a copy of the certificate transmitted to Gulfco, together with Gulfco's portion of the premium. On February 12, 1974, Emmett Flaherty died. Proof of death and a request for payment under the policy were sent to Gulfco. Gulfco denied coverage, and this suit followed.
Plaintiff filed suit on August 13, 1974, to recover the benefits due under the credit life policy, together with penalties under LSA-R.S. 22:656. In response to this suit, Gulfco, after the resolution of several exceptions, answered the suit denying coverage on the basis of a clause in the policy requiring the insured to be in sound health at the time the policy was issued, and alternatively naming as third party defendants Mansura State Bank and/or Nathan Ducote as agents acting outside their authority. Trial on the merits was had on May 30, 1975, and on the basis of written reasons rendered, a formal judgment was signed on July 11, 1975, in favor of plaintiff and third party defendants against Gulfco.
Gulfco alleges as error on the part of the trial court the failure to apply the "sound health" provision of the policy sued on. The policy states in pertinent part as follows:
"This policy shall not insure against loss of life unless assured is in sound health upon the date on which this policy is issued.
"Assured shall be presumed not to be in sound health on the date hereof should the assured have been treated for any disease, sickness or injury within six months prior to the date of this policy, which disease, sickness or injury shall be a substantial contributing cause of Assured's death while this policy is in force."
Gulfco contends that the medical evidence submitted at the trial clearly indicates that Mr. Flaherty was in extremely poor health at the time the policy was issued.
The record in this case reveals that several years prior to the dates in question Mr. Flaherty underwent surgery to remove a portion of his jawbone and upper palate. This operation was required due to the existence of a cancerous tumor. He subsequently had to be fed through tubes inserted through his nose. In the ensuing years he suffered from weight loss. The record also indicates that subsequent to this operation, which was performed in 1969, Mr. Flaherty was periodically examined to be sure the cancer had been arrested. These subsequent examinations revealed no recurrence of the cancer. Mr. and Mrs. Flaherty were told that the cancer had been arrested. Gulfco argues that the evidence indicates that Mr. Flaherty was not in sound health at the time the policy was issued, and that as a result the policy never took effect. Plaintiff argues that Gulfco *439 has failed to prove that at the time the policy was issued Mr. Flaherty was not in sound health. Plaintiff contends that following the surgery all tests indicated that Mr. Flaherty's cancer had been arrested.
The issue before this court is not whether the insured was in sound health at the time the policy was issued but rather whether the insurer can escape liability on the basis of a sound health clause in its policy where its agent was authorized to issue insurance to debtors who were not required to submit to a medical examination nor even asked about the health of the prospective insured. The evidence in the record indicates that Gulfco allowed Nathan Ducote to issue credit life insurance to Mr. Emmett R. Flaherty without any inquiry into the health of Flaherty, past or present. No medical examination was required of Mr. Flaherty prior to the issuance of the policy. At the time the policy was issued, Mrs. Flaherty made application on her husband's behalf because he was in the hospital and unable to go to the bank himself. This information was communicated to Ducote. Mrs. Flaherty had to take the papers prepared in connection with the loan to the hospital for her husband to sign them. This information was also communicated to Ducote. Ducote testified that he did not know Mr. Flaherty personally and had no knowledge of his present or prior health. He further stated that he asked no questions with regard to the health of the prospective insured. He stated that he was never instructed by either Gulfco or the bank to ask any questions relating to the health of the prospective insured.
It is also important to note that Mrs. Flaherty never received a copy of the insurance certificate which was filled out on the date of issuance. She did not even have to sign the form, and her testimony is that she never saw the form. The certificate, which contained triplicate copies, was to be filled out by Ducote with the name of the insured and his age, the date of issuance, the term of the policy, the premium due, the name of the first and second beneficiaries and the amount of coverage. The form was filled out by Ducote and signed by him. The signature of Robert Eddy, President of Gulfco, also appears on the certificate. When the certificate was filled out by Ducote in connection with the loan taken out by plaintiff and her husband, it was intended that plaintiff receive a copy for her records. In fact, the copy intended for plaintiff was sent to Gulfco. Plaintiff received no copy of the certificate.
Under the circumstances of this case, we find Gulfco liable to plaintiff for the face value of the policy. There was no allegation of fraud or misrepresentation on the part of plaintiff or her husband. Nor does the record support a finding of fraud or misrepresentation. Plaintiff applied for a loan from Mansura State Bank for herself and her husband, and in connection with the loan she applied for credit life insurance. No medical examination was required and no inquiry was made into the health of the prospective insured. The Flahertys paid the premium due and were led to believe that they had insurance coverage. Under the circumstances Gulfco cannot rely on its "sound health" clause to deny coverage to plaintiff.
Gulfco also contends that since the policy was written in excess of the limits set forth on the certificate no recovery can be had. Mr. Flaherty was 68 years of age at the time the policy was issued. The certificate contains limitations on the reverse side of one of the three copies, which limit insurance coverage for a person 68 years of age to $1,500.00 for a term of not more than six months. The certificate written herein was in the amount of $10,000.00 for a term of one year. These amounts, as well as Mr. Flaherty's age, appear on the face of the certificate. Copies of the certificate were transmitted to Gulfco. Gulfco thereafter accepted the premium paid by the Flahertys and remained silent as to the *440 excessiveness of the policy terms until a claim was made more than four months later. When the claim was made on the policy Gulfco refused to pay the claim but retained the premium. We find a ratification by Gulfco of the acts of its agent in connection with the writing of the insurance policy in favor of Mr. Flaherty.
This court in Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir. 1970) set forth the following:
"The general theory of ratification of unauthorized acts of an agent is that the principal, with full knowledge of the facts, consents to the unauthorized actions and adopts the contract as if it had been previously authorized."
In the present case Ducote issued the insurance certificate in favor of Mr. Flaherty for excessive amounts, both as to coverage and term. Gulfco received copies of the certificate and filed it. On its face the certificate indicated that it had been written for an excessive amount and term. However, instead of correcting the error that had been made, Gulfco merely filed the certificates, received the premium payment and made no attempt to correct the errors until a claim was made under the policy. This constituted a ratification of the acts of Ducote by Gulfco, and Gulfco can no longer assert these acts as a basis for denying coverage.
Gulfco alleges error on the part of the trial court in denying its third party demand against the Mansura State Bank and/or Nathan Ducote for breach of the agency contract by issuing a policy in excess of the limits printed on the certificate and by negligently issuing a policy without first determining whether the prospective insured was in good health. We find no merit to these arguments by Gulfco.
Ducote testified that he was never instructed by Gulfco to discuss any exclusions with persons applying for insurance. In addition, Mr. Robert Eddy, President of Gulfco, indicated that no instructions, either verbal or written, were given to agents in connection with the insurance materials sent to the agents. Mr. Eddy was asked if the agent was informed as to how he should determine the age of the prospective insured, as to how to determine the limitations on the policies and as to who was to receive what copies of the certificates. His answer was that he did not feel it necessary that these things be explained to the agents. There is no evidence in the record to indicate that anyone instructed Ducote as to how a policy should be prepared and the limitations and exclusions in connection with issuance of the policies. The testimony of Mr. Eddy is corroborated by this significant testimony on the part of Ducote: When asked who instructed him how to write policies for Gulfco, he stated, "Well, I learned by the hard way. I had to learn myself. Nobody showed me. I learned what I knew as I'd go along."
Our reading of the record in this case indicates no error on the part of the trial judge in denying Gulfco's third party demand. Gulfco turned over to Ducote certificates to be filled out in connection with the issuance of insurance for Gulfco. No instruction was given as to how to prepare the certificates or what limitations or exclusions were provided. No medical examinations were required and no instruction was given to inquire into the health of the prospective insured. Under these facts we find that no basis for the claim by Gulfco against Ducote or the Mansura State Bank.
Plaintiff has answered the appeal arguing that she is entitled to penalties under LSA-R.S. 22:656, which provides as follows:
"All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days from the date of receipt of due proof of death and *441 should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid."
The evidence presented in this case supports the trial judge's refusal to award plaintiff penalties under the cited statute, and we will not disturb his ruling in this connection.
For the reasons assigned, the judgment of the trial court is affirmed at defendant-appellant's costs.
Affirmed.
MILLER, J., dissents and assigns written reasons.
MILLER, Judge (dissenting).
With serious reservations, I could affirm the trial court's award of the $10,000 policy limits to Mrs. Flaherty. The denial of penalties is entirely correct. I respectfully dissent from the dismissal of Gulfco's claim against Mansura State Bank and/or Nathan Ducote. In my view, Gulfco and the Bank were both negligent and are jointly liable.
Mr. Ducote is executive vice-president and cashier of Mansura State Bank and had worked for the bank in differing capacities for some twelve years. At Tr. 249 he testified these credit life insurance policies are written as much for the benefit of the bank as for the benefit of the insured and his estate.
During the month of October 1973 when the Flaherty $10,000 policy was written, the bank collected premiums on Gulfco policies totaling $702.84. These premiums were deposited to the account of Mrs. D. P. Roy, president of Mansura State Bank. In accordance with the bank's usual procedure, in November of 1973 the bank forwarded to Gulfco all policies written in October together with Gulfco's 40% share of the premiums$281.14 (of the $702.84 collected) for the October business. The bank's 60% share (which came to $421.70.) remained in the personal account of Mansura State Bank's president Mrs. Roy. Her husband, Mr. Sookie Roy, is owner of Mansura State Bank and president of another Avoyelles Parish bank.
Gulfco's arrangement for Mansura State Bank to handle the credit life program was confected with its owner Mr. Roy. As far as Ducote could remember (Tr. 208), Roy in turn made Ducote "the agent" or individual to handle the Gulfco insurance matters. While it is true Gulfco was negligent in failing to train or instruct Ducote, the bank's president (husband of the bank's owner) was receiving 60% of all premiums paid for Gulfco's policies. The bank cannot permit coverage to be written where the insured cannot walk, cannot eat, and cannot appear at the bank. The bank's receipt of 60% of all premiums requires the exercise of some interest in the problems related to issuing credit life insurance policies.
Although Roy did not testify it appears that he understood the conditions for writing policies. His failure to communicate these instructions and restrictions is gross negligence which makes the bank jointly liable for the benefits due Mrs. Flaherty.
It is apparently conceded this policy should have never been writtencertainly not for more than $1,500, the maximum coverage available for an insured of Mr. Flaherty's age. The majority did not find it relevant to review the extensive medical history following the 1969 surgery to remove Flaherty's malignant jawbone and upper palate. The record supports Mrs. Flaherty's conclusion (Tr. 196) that after 1970 her husband was in the hospital more than he was at home.
When Mr. Flaherty was working for a shipping concern as master of ocean going vessels, he weighed 180 pounds. After the 1969 surgery he was unable to get sufficient nourishment. The tubes inserted *442 through Flaherty's nose to his stomach were not adequate, so the doctors at Marine Hospital in New Orleans performed surgery inserting tubes through the abdomen area directly into the stomach. This operation was performed in the spring of 1973. Flaherty continued to regurgitate his food and would almost smother, so the tube directly into his stomach was removed. From October of 1972, when the bank first made the loan, until January of 1974 Flaherty's weight decreased from 140 pounds to 86 pounds.
In January of 1974 Mrs. Flaherty took her husband to the hospital so that they might insert tubes and build up his weight. After one day Flaherty was discharged "because at that time (there was) no further benefit from his hospitalization. He refused his medication. He refused to stop smoking. He had caused several burns of bedding with cigarettes, still refused to stop smoking, somewhat of a danger to himself. He kept insisting (on) receiving narcotic medications which we did not feel he needed." (Deposition of Marine Hospital physician.)
Dr. McCann was Flaherty's local treating physician. As the reason for Flaherty's February 12, 1974 death, he gave "metastatic carcinoma." At Tr. 232 he gave his reason for this conclusion:
". . . on the basis that his wife ishas explained to me that he had carcinoma of the throat and he has had multiple operations of the throat and mouth area to eliminate his carcinoma; and that he has been treated in New Orleans; it was some unreasonablewell not unreasonable but some enormus number of surgical procedures that the wife told me he hadlike 19 or 25 or something that was very unusual; and the fact that he was having all the typical symptoms of a terminal cancer patient . . . (unintelligible interruption) excruciating pain; just going to nothing, you know, at the final stages of his illness."
The record leaves no doubt that Flaherty was starving to death because he could not take sufficient nourishment, and that he was heavily sedated with narcotics during the last months of his life.
Mansura State Bank made the first loan to the Flahertys in October of 1972 while Flaherty was on one of his extended hospital stays. Mrs. Flaherty was brought into the Mansura bank by the bank's owner Mr. Roy. In the presence of Roy, the Mansura bank's vice-president Bordelon, and the Mansura bank's executive vice-president and cashier Ducote, Mrs. Flaherty stated her husband was in the hospital. Mrs. Flaherty testified that Roy knew her husband but hadn't seen him in some time. There is no indication that Bordelon or Ducote knew Flaherty.
The October 1972 loan was secured by a mortgage on the Flaherty's home place property. The property may be of insufficient value to secure the loan, for in referring to Mrs. Flaherty's financial condition her attorney stated at Tr. 266, "you can't get blood out of a turnip." The 1972 mortgage and note were signed by both Mr. and Mrs. Flaherty. Mrs. Flaherty took the papers to the hospital in New Orleans for her husband's signature. The October 1972 loan was insured by a Gulfco six month credit life policy on Flaherty's life. Without an additional application by Mrs. Flaherty, the bank issued a new six month policy on Flaherty's life in April of 1973. In these policies, Ducote stated Flaherty's age to be 59. It is not entirely clear why this misinformation appeared on the policies.
When the insurance was about to expire in October 1973, Mrs. Flaherty applied to renew and increase the loan. She brought the new note to her husband who was at home in Avoyelles Parish at the time. The $10,000 credit life insurance on Flaherty was written October 3, 1973 and Flaherty's age was stated on the face of the policy to be 68. The original of this policy was *443 mailed to Gulfco on November 12, 1973 (Tr. 133), and copies were mailed to the Flahertys shortly thereafter. At Tr. 172 and 176, Mrs. Flaherty testified they received two copies of this policy two months before her husband passed away. Flaherty looked at them and said "well, I'm insured."
The trial court held the evidence to show "gross negligence and omissions which the court feels and holds, are entirely due to the fault of the defendant's agents and employees. The policy was issued by defendant's agent; he asked no questions; he collected the premiums; the company received those . . ." I can agree with these conclusions when it is noted the bank was made a defendant by the pleadings. The bank received 60% of the premium and the bank cannot close its eyes to evidence so readily available.
Only twenty-six lines appear on the face of the policy. Five of these lines set forth the "sound health" exclusion and set forth the presumption that the insured is not of sound health when the assured dies of a disease or sickness he had six months before the policy date. This is set out in clear legible print on the face of this extremely short policy. The print is the same size as the print explaining the death benefits provided by the policy. To suggest that the executive vice-president and cashier of a bank would sign such an important document hundreds of times without once comprehending his role in the issuance of this coverage is not acceptable to me.
The trial court went on to hold the ". . . errors or neglect of duty here are attributable to Gulf-Co Insurance Company's agents and officers; and not to the bank or its employees." This appears to me to be manifestly incorrect.
I respectfully dissent.

ON APPLICATION FOR REHEARING
MILLER, Judge (voting to grant a rehearing).
I vote for rehearing for the sole purpose of reconsidering our rejection of defendant Gulfco's third-party demand against Mansura State Bank.
To clarify reasons assigned in my dissent, I submit the majority erred in rejecting the third-party demand. I understand this holding was based on Gulfco's ratification of the contract. In ratifying an agent's action, the principal incurs a binding obligation to a third party. The social policy which protects the innocent third party does not require excusing an agent for his negligent or wrongful act. Ducote was aware Flaherty was hospitalized and never appeared at the bank. To write a policy of credit life insurance without inquiry as to the cause was grossly unreasonable and a reckless disregard of his fiduciary obligation to Gulfco.
Ducote received no commission for writing the insurance and performed the task solely as part of his bank duties. Whether he or the bank is the nominal agent for the insurance company, the bank is responsible for Ducote's acts in the course of his employment.
Ducote not only failed to inquire about Flaherty's health, but wrote the policy for an amount far in excess of limits allowed by terms of the policy. Accepting his testimony to a complete lack of instruction, it was doubly incumbant that he read the terms of the instrument he was executing. It is respectfully submitted that, at the very least, Ducote and the bank should be cast for the amount in excess of the limits.
Ducote's conduct in executing an instrument for his principal without regard to its content is so gross that it is unreasonable to relieve him of responsibility, especially since he acted as a responsible bank officer.