421 So.2d 1175 (1982)
Aubrey MAXWELL et ux., Plaintiffs-Appellees,
v.
Lawrence E. GIBSON and City of Monroe, Defendants-Appellants.
No. 15022.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Writ Denied February 4, 1983.
Thomas V. Gardner, Jr., Asst. City Atty., Monroe, for defendants-appellants.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, for plaintiffs-appellees.
Before MARVIN, FRED W. JONES and NORRIS, JJ.
*1176 FRED W. JONES, Judge.
A husband and wife sued a city bus driver and his governmental employer for damages sustained when a car driven by the wife was hit in the rear by a city bus. From a judgment in favor of plaintiffs, defendants appeal, contending the trial judge erred in (1) finding that the failure of the defendant bus driver to testify raised a presumption that his testimony would have been unfavorable to defendants; (2) determining that the defendant bus driver was guilty of negligence and that plaintiff wife was free of contributory negligence; and (3) awarding an excessive amount for general damages.
For the reasons hereinafter set forth, we affirm.
At about noon on February 3, 1979 Mildred Maxwell was driving north on South Second Street (four lane thoroughfare with two northbound lanes separated by a median from two southbound lanes) in Monroe. As Mrs. Maxwell stopped her car at the intersection of South Second Street and Texas Avenue in obedience to a traffic signal, the rear of her automobile was struck by a Monroe city bus driven by Lawrence Gibson. These facts are uncontroverted. The manner in which Mrs. Maxwell operated her vehicle immediately prior to reaching the intersection is sharply disputed, with defendants contending that the accident was caused by Mrs. Maxwell's abruptly changing lanes and cutting in front of the bus just before suddenly stopping for the traffic light.
Mrs. Maxwell testified that a few minutes before the occurrence of the accident she had turned onto South Second Street and proceeded north in the right or outer lane at a speed of 20 miles per hour. Approaching the Texas Avenue intersection, she observed the traffic light facing her turn to red and she stopped her car, at which time her vehicle was struck from the rear by a city bus. She denied ever changing lanes during this trip down South Second Street and stated she neither saw nor heard the bus prior to the collision. According to Mrs. Maxwell, there were two uniformed city employees on the bus, one of whom was Gibson, the driver.
Called to testify by plaintiffs were John Palmisano and James Shows, both of whom were standing near the intersection in question when the accident occurred but neither of whom actually witnessed the collision. Palmisano stated that he heard the impact, looked up and saw the Maxwell car stationary in front of the bus in the outer traffic lane. He also observed several cars, headed north, stopped in the inner lane of South Second Street at the intersection in question. The testimony of Shows was substantially the same as that of Palmisano. He denied having heard anything just prior to the accident that would have indicated the bus was taking emergency action to prevent a collisionsuch as a horn blowing or brakes squealing.
Testifying on behalf of defendants were four passengers who were riding on the bus. Each stated that Mrs. Maxwell, driving in the inner traffic lane, passed the bus which was in the outer lane, then suddenly turned to the right directly in front of the bus and abruptly stoppedleaving the bus driver no time to avoid the ensuing collision. One of these witnesses was sitting on the back seat on the left side of the bus, while the other three were positioned on the right side of the bus.
For reasons not explained in the record, the bus driver, Gibson, did not testify on behalf of himself or his defendant employer, nor did either defendant call to testify the other city employee who was riding on the bus at the time of the accident.
In written reasons for judgment, noting the failure of the bus driver and his fellow employee to testify, the trial judge presumed that their testimony would have been unfavorable to the defendants, in accordance with the recognized rule of evidence. He then made the factual determination that Mrs. Maxwell was properly stopped for the traffic light, in the outer traffic lane, when the bus struck her automobile in the middle of the rear bumper. The trial judge proceeded to conclude that the defendant bus driver was negligent and, *1177 consequently, defendants were liable to plaintiffs for their damages.
In this case the bus driver was in the best position to describe exactly how the collision occurred, particularly with reference to the operation of the Maxwell vehicle in relation to the bus just before the accident. Under these circumstances, the unexplained failure of that defendant to testify reasonably led the trial judge to the inference that his testimony would have been unfavorable to the defendants. Wigmore on Evidence, 3rd Ed. (1940), § 285, p. 192; Pugh, Louisiana Evidence Law, pp. 716-718.
Based upon our review of the record, we cannot say that the trial judge clearly erred in accepting Mrs. Maxwell's version of events surrounding this accident, particularly in view of the testimony by the disinterested witnesses that they did not hear the bus driver sounding his horn or applying pressure to his brakes just before the collision, as would have been expected if the bus driver was faced by a sudden emergency of the kind claimed by defendants. Further, there is the physical evidence that the Maxwell car was struck in the middle of the rear bumper by the front of the bus, tending to show that Mrs. Maxwell was properly positioned in her traffic lane when struck by the bus.
As pointed out in Canter v. Koehring Co., 283 So.2d 716 (La.1973):
"[w]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
Further, based upon this fact-finding that Mrs. Maxwell was properly in the outer traffic lane, stopped for the traffic light, when her car was struck from the rear by the bus, the trial judge correctly applied the general rule of law that "when a following vehicle collides with the rear of a preceding vehicle, the following vehicle is presumed to be at fault and bears the burden of exculpating himself from the inference of negligence." Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980).
Since the defendants did not rebut the inference that the bus driver was negligent, the record amply supports the trial judge's determination that his negligence was the sole cause of the accident, rendering the defendants liable for plaintiffs' damages.

Quantum
Defendants argue that the trial judge's award of $40,000 to Mrs. Maxwell for general damages is excessive.
Immediately following the accident, the 56 year old plaintiff complained of pain in her chest and back. She was taken to the emergency room at the St. Francis Medical Center. X-rays were taken, but the results were negative for fractures. Arthritic changes of chronic nature were noted in the spine. Conservative treatment was prescribed and Mrs. Maxwell remained in bed for several weeks. When her symptoms failed to subside, Mrs. Maxwell's family doctor referred her to Dr. Ledbetter, an orthopedic surgeon. On June 27, 1979 a myelogram was performed, revealing the existence of a large herniated disc at the interspace between the 4th and 5th lumbar vertebrae. Dr. Ledbetter stated that, because of this condition, Mrs. Maxwell was significantly disabled for an indefinite period of time, unable to perform housework of moderate severity. This diagnosis was confirmed by Dr. Beach, a neurosurgeon.
Defendants assert that Mrs. Maxwell's ruptured disc was caused, not by the bus collision, but by a later trauma. No evidence was presented to support this theory. Drs. Ledbetter and Beach agreed that it was impossible to determine whether the herniated disc was caused solely by the accident or whether it was also attributable in part to an aggravation of the arthritic condition. *1178 In the latter event, of course, defendants would still be liable since they took the plaintiff as they found her.
Considering the gravity of Mrs. Maxwell's back condition and its disabling effects, we are unable to say that the trial judge abused his broad discretion in making the general damage award of $40,000.
For these reasons, we affirm the judgment of the district court, at appellants' cost.