482 So.2d 979 (1986)
Alen COOLMAN, et ux, Plaintiffs-Appellees,
v.
TRANS WORLD LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 84-1011.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
*980 Robert J. Donovan, Jr., Shreveport, and Gregory N. Wampler, Colfax, for defendant-appellant.
Michael I. Murphy, Natchitoches, for plaintiffs-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
FORET, Judge.
This appeal results from a suit on a $5,000 life insurance policy issued by defendant, Trans World Life Insurance Company (Trans World), on September 1, 1981, on the life of William E. Roe. Betty A. Coolman, daughter of the insured, is the beneficiary and plaintiff. Plaintiff's original petition alleged issuance of the policy and subsequent failure of Trans-World to pay policy benefits upon timely notice of the insured's death. In addition, plaintiff prayed for statutory penalties pursuant to LSA-R.S. 22:656. Plaintiff's supplemental and amended petition alleged that defendant's agent took the policy application and assured plaintiff that pre-existing health problems of the insured would not negate coverage. In response, defendant stated that insured misrepresented his health by making false statements to defendant's agent when filling out the application and that the misrepresentations were material and made with the intent to deceive defendant.
The trial court found that defendant's agent told plaintiff that as long as the insured "was alive and breathing," he was insurable; that defendant's agent was aware of some of the medical problems besetting Mr. Roe, and that defendant did not prove by clear and convincing evidence that insured was not in sound health at the time the policy was issued and delivered. The court awarded plaintiff $5,000, but denied statutory penalties. The issue in this appeal is whether or not the "sound health clause" in the life insurance policy is to be applied here, to deny recovery to the plaintiff-beneficiary.

FACTS
We will quote extensively from the trial court's opinion with some editorialization.
"Betty Coolman, the beneficiary, testified that she was previously acquainted with the defendant's agent, Bonnie Ferrier and that she had been approached by Mrs. Ferrier for the purpose of writing insurance on her, her husband and children. Mrs. Coolman was not open to this suggestion but indicated she was desirous of obtaining insurance on her father, Mr. Roe. The application in question was signed at the home of Mrs. Coolman. Mr. Roe, the insured, was not present, but, at that time was at the home of another daughter. When the application was taken, there was present in the Coolman home the following major persons: Betty Coolman, Allen (properly Alen Coolman), Richard Coolman (deceased at the time of the trial), and Bonnie Ferrier. "Since Mr. Roe was absent, Mrs. Ferrier told Betty Coolman to sign William E. Roe's signature to the application. The negative responses to the questions on the application concerning pre-existing illnesses, medical and hospital treatment were filled in by Mrs. Ferrier. Mrs. Coolman says she told Mrs. Ferrier about Mr. Roe's physical condition and that he had been treated for a serious illness. According to Mrs. Coolman, Mrs. Ferrier's response to her was `If he is alive and breathing', Mr. Roe was insurable."
*981 Mrs. Coolman testified that she has known Mrs. Ferrier all of her life and that Mrs. Ferrier had been to the house two or three times before. Mrs. Coolman also testified that the questions appearing on the application in regard to physical health were never asked. Plaintiff testified, and her testimony has been corroborated by that of her husband's, that she was only asked if her father was in sound health. At that time she responded that he had had surgery and that he did have cancer. Plaintiff further testified that defendant's agent, Mrs. Ferrier, told her that she (agent) was instructed by her boss that if Mr. Roe was breathing to go ahead and take the application for insurance.
The trial court's reasons for judgment continued:
"Alen Coolman corroborated his wife's testimony on this point and stated that he had heard Mrs. Ferrier tell Mrs. Coolman that if Mr. Roe was `alive and breathing' at the time the application was being processed, he was insurable. Mrs. Ferrier's answer to the Coolman's [sic] testimony was that Mrs. Coolman had told her that there was nothing `fatally' wrong with Mr. Roe. She denied making the statement about Mr. Roe being insurable as long as he was alive and breathing. She further stated that it was not `unusual' for an offspring to sign an application on behalf of a parent when they took out insurance on a parent. She stated that she witnessed the signature of `William E. Roe' (actually signed by Betty Coolman) and, again, that there was nothing unusual about the procedure."
Obviously the plaintiff's testimony conflicts with defendant's agent, Mrs. Ferrier. The agent claims that in response to her questions from the application, plaintiff denied that Mr. Roe had any pre-existing condition. We note that plaintiff testified that she had attempted to take out another life insurance policy on her father, in order to cover the cost associated with burial, with Central State Life Insurance Company. The application was denied because Mr. Roe's condition was such that the company would not insure him. Mr. Coolman testified that the reason Central Life Insurance denied coverage was because Betty Coolman's older sister had taken out a burial policy with Central State Life Insurance Company, and therefore Betty Coolman was unable to get more insurance because of Mr. Roe's condition.
The trial court stated that:
"It is the opinion of the Court that Mrs. Ferrier did in fact tell the Coolmans that Mr. Roe was insurable as long as he `was alive and breathing'. The Court is emboldened in this conclusion by the fact that Mrs. Ferrier never attempted to speak to Mr. Roe nor question him about his healthalthough she knew him and saw him every `3 or 4 years'. And while it might not be unusual for a daughter to sign the application for her father and for the agent to witness the application, Mrs. Ferrier's cavalier attitude in reference to this procedure indicates that she wanted to write the policy under any conditions. The Court further finds that Mrs. Ferrier was certainly aware of some of the medical problems that had beset Mr. Roe. Otherwise, she would not have made reference to the testimony of Mrs. Coolman that nothing was `fatally' wrong with Mr. Roe at the time the application was made. Furthermore, there is nothing in the record to show that at the time the policy was issued, that Mr. Roe's condition was such that his demise was eminent. No medical testimony was adduced, no hospital record was filed in evidence, and all the Court has to go on is the death certificate filed in evidence (Defendant's exhibit # 3). This certificate shows that Mr. Roe was attended at the V.A. Hospital at Alexandria from August 31, 1981 until he died on November 6, 1981 from (A) Cardio Respiratory Arrest caused by (B) Metastatic Carcinoma Kidney and left hip.
"No doubt, Mrs. Coolman was aware that her father had suffered ill health. She had tried to get insurance on him previously and had been turned down. *982 But, the defendant, through its agent, Mrs. Ferrier, chose to issue the policy although it was apprised of the fact that Mr. Roe had previously undergone serious health problems." (emphasis ours.)

FALSE STATEMENTS ON APPLICATION
The application in question in this case was filled out by defendant's agent, Bonnie Ferrier, and dated August 18, 1981. The application for insurance provides as follows:
"Are you now in sound health?.....
Have you any physical or mental defect or infirmity; congenital or otherwise?.....
Have you been under the care of any physician within the past three years?.....
Have you been treated in any hospital or institution within the past five years?....."
Mrs. Ferrier responded "yes" to the first question and "no" to the other three. Trans World alleges that the answers to these questions are untrue. It is undisputed that the responses to the above questions are inaccurate. At the time the application was processed and filled out, Mr. Roe had been diagnosed as having a terminal illness. However, the length of time until his guaranteed demise was uncertain.
LSA-R.S. 22:619(B) states:
"In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insured." (emphasis ours.)
"In order for an insurer to avoid liability on the basis of material misrepresentations the insurer must meet a three-tiered burden. It must be shown that the statements were false. Second, the insurer must establish that the representations were made with an actual intent to deceive. Third, the insurance company must establish that these misstatements materially affected the risk assumed by the insurer. Martin v. Security Industrial Insurance Company, 367 So.2d 420 (La.App. 2nd Cir.1979), writ refused 369 So.2d 1364 (La.1979)." Ryan v. Security Industrial Insurance Company, 386 So.2d 939, 941 (La.App. 3 Cir.1980).
Trans World contends that Mr. Roe gave false answers to the questions on the application. However, defendant's agent, Bonnie Ferrier, testified that Mr. Roe was not present at the time the application was taken and that Mr. Roe did not sign the application. Instead, Mr. Roe's daughter, Betty A. Coolman, signed Mr. Roe's name to the application. Mrs. Coolman did not answer the questions on the application. Defendant's agent testified that her handwriting appears in response to those questions.
The settled law in Louisiana is that the acts of an insurance agent in filling out an application form falsely are the acts of his principal, the insurer, and that they do not bind the innocent insured nor do they bar recovery by him or his beneficiaries. Ryan v. Security Industrial Insurance Company, supra; Cloud v. Security General Life Insurance Co., 352 So.2d 406 (La.App. 3 Cir.1977); Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La. App. 3 Cir.1965); Green v. Pilot Life Ins. Co., 450 So.2d 406 (La.App. 3 Cir.1984); Bertrand v. Protective Life Insurance Co., 419 So.2d 1254 (La.App. 3 Cir.1982).
The record reflects that the application form did contain false statements. However, the inaccurate statements were the result of the agent's filling out the application falselynot the applicant. Consequently, defendant's agent's acts do not bar this beneficiary from recovery. The trial judge rejected the defense of material misrepresentation stating that:

*983 "In any event any misrepresentations were the results of Mrs. Ferrier's actions, and not the plaintiff."
Because the insured and the applicant did not fill out the application, no false representation on their part with intent to deceive the insurer has been proven, and this specification is without merit.

SOUND HEALTH CLAUSE
Trans World contends that it is not liable on this life insurance policy because the "sound health" clause found in the policy provides that the contract of insurance will not become effective until the date of issue, provided the insured is then alive and in sound health, but not otherwise.
Trans World alleges that coverage never became effective because Mr. Roe was not in "sound health" at the time the policy was issued on September 1, 1981. However, we believe this issue to be irrelevant because defendant's agent, Mrs. Ferrier, effectively waived the "sound health" clause on behalf of defendant-insurer by stating that Mr. Roe was insurable if he were "alive and breathing" at the time the policy was issued. Mrs. Ferrier was aware that the insured's medical condition was not normal. Furthermore, had the agent made any attempt to inquire as to the questions on the application before answering them on behalf of the insured or the applicant, it would have been readily apparent to her that Mr. Roe was in less than perfect health.
"An insurer or its agent will not be allowed to misrepresent the age of an insured and then rely on its own fraudulent misrepresentations as a coverage defense." Bank of Coushatta v. Thomas, 378 So.2d 1041, 1044 (La.App. 2 Cir.1979). Likewise, we believe it to be reprehensible for an insurer or its agent to misrepresent the health of an insured and then rely on that fraudulent misrepresentation as a coverage defense.
The insurance policy provides that "[t]he terms of this policy cannot be waived, changed nor altered by any agent or representative of the Company, except by an endorsement signed by the Company's duly authorized officers." The policy wasn't issued until September 1, 1981, although the application was taken August 18, 1981. Therefore, the plaintiff had no direct notice of any limitation on agent Ferrier's authority. Plaintiff believed that defendant's agent had the authority to represent the company in the application taking and issuance of the policy. Plaintiff relied on the agent's representations to the effect that her father would be insured by the agent's company. The agent, Bonnie Ferrier, had knowledge that Mr. Roe was very ill, and this knowledge is imputed to the defendant company. Consequently, we believe that defendant is estopped from denying liability under this insurance policy. Monroe Air Park No. 1 v. American Aviation & General Insurance Company, 41 So.2d 795 (La.App. 2 Cir.1949); Maggio v. State Farm Mutual Automobile Insurance Company, 102 So.2d 505 (La.App. 1 Cir.1958). Plaintiff relied on the agent to look after her interestscoverage as long as her father was "alive and breathing."
Defendant complains that the trial court erred when it held that the only evidence introduced by defendant to overcome the restrictive rule of the "sound health" provision of the policy was the introduction of the death certificate. Defendant avers that the parties had stipulated that the decedent had a "pre-existing" condition at the time of the issuance of the policy, and therefore no further evidence was necessary. However, in the alternative, defendant moved to have the matter remanded to the trial court for introduction of evidence as to the decedent's physical condition at the time of the issuance of the policy. As we have noted above, however, and as the trial court also held, and to quote the trial court, "Finally, assuming, arguendo, that the defendant met this burden and overcame the restrictive rule, Mrs. Ferrier [the insurance agent] effectively waived this clause on behalf of the defendant by stating that Mr. Roe was insurable if he was `alive and breathing' at the time the policy was issued." Accordingly, we find that *984 this contention of the defendant has no merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.