537 So.2d 1297 (1989)
Joyce SWAIN, for and on Behalf of the ESTATE OF Billie J. SWAIN, Appellant,
v.
LIFE INSURANCE COMPANY OF LOUISIANA, Appellee.
No. 20275-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Rehearing Denied February 16, 1989.
Writ Denied April 21, 1989.
*1298 Tyler & Johnson by Tommy J. Johnson, Shreveport, for appellant.
Nelson & Achee, Ltd. by Harry R. Nelson, Shreveport, for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a suit by Joyce Swain, suing as beneficiary of the Estate of Billie Swain, for the proceeds on a credit life insurance policy taken out by her now-deceased husband, Billie Swain. On August 2, 1985 Billie Swain, a retiree of GMAC, purchased a car from Red River Motor Company ("Red River"). Mr. Swain financed the car through GMAC, and also financed a credit life insurance policy premium of $630.28. The policy was issued by the defendant, Life Insurance Company of Louisiana, and sold through its agent at Red River. In late October of 1985 Mr. Swain was diagnosed as having lung cancer, and subsequently died on December 16, 1985. Mrs. Swain's claim for benefits was rejected by the defendant on the grounds that Mr. Swain had made false claims on the insurance application and that he was not in "sound health" on the date the policy was issued. After trial the judge rejected the plaintiff's claims. Mrs. Swain has appealed to this court, arguing that the court below erred in not awarding benefits under the policy. She also seeks penalties under LSA-R.S. 22:656. We reverse and render.
At trial Mrs. Swain testified that she accompanied Mr. Swain to the dealership *1299 on the day he bought the policy, and that they were apart only while she went with the salesman to look at the cars. Because Mr. Swain was on crutches, he did not accompany them to the back parking lot. She was present when Mr. Swain bought the car and the credit life insurance, and while the papers were signed. Mr. Swain agreed to purchase credit life insurance at the suggestion of Mr. Shearer, an aquaintance of Mr. Swain's who worked for the defendant and was present at Red River that day. She said the car salesman asked Mr. Swain no questions about his health, although Mr. Swain was on crutches while at the dealership. Mrs. Swain was uncertain of who typed in the blanks on the credit life application form, though she did know that it was done by someone at Red River. Mr. Swain was not instructed or requested to read the credit life application form, and he did not read it. He merely signed the application when it was presented to him with the other papers that required his signature. None of Mrs. Swain's testimony was contradicted by the defendant. We note that the salesman who sold Mr. Swain the car and policy was not called by the defendant to testify. Defendant's unexplained failure to call as a witness the auto salesman who was acting as its agent creates a presumption that his testimony would be unfavorable to the defendant. Cangelosi v. McInnis Peterson Chevrolet, Inc., 373 So.2d 1346 (La.App. 1st Cir.1979); Maxwell v. Gibson, 421 So.2d 1175 (La.App. 2d Cir.1982), writ denied 426 So.2d 179 (La.1983).
Mr. Swain's prior medical records were introduced at trial. In 1980 he had triple by-pass surgery; in 1982 he was diagnosed as having Laennec's cirrhosis; he was hospitalized in 1982 from June 21 to July 21; from August 17 to August 24; and from October 29 to November 2; in 1983 from August 26 to August 30; in 1985 from April 21 to 23; on April 29; and from May 28 to May 31. Mrs. Swain testified that the majority of these periods of hospitalization were for adjustments to medication he was required to take. Mr. Swain was hospitalized again from June 17 to 29 for hip surgery, some three weeks before buying the car. He had hip surgery again during an August 22 to September 1 hospitalization. However, Mrs. Swain testified that the day they purchased the car Mr. Swain, although on crutches from his hip surgery, was in good spirits and doing well.
The parties stipulated that at the time of Mr. Swain's death $14,443.88 was owed on the car loan.
MISREPRESENTATIONS
Mrs. Swain first argues the trial court erred in denying coverage for misrepresentation on the application. The form states that the signer attested that for the past three years he had had neither treatment for heart condition nor any medical treatment except for that set forth in the policy.[1] None of Mr. Swain's medical history was set forth in the form as directed.
For an insurer to avoid liability on the grounds of misrepresentation in a life insurance application, it must establish that false statements were made with an actual intent to deceive and that the misstatements materially affected the risk assumed by the insurer. Martin v. Security Indus. Ins. Co., 367 So.2d 420 (La.App. 2d Cir. 1979), writ denied, 369 So.2d 1364 (La. 1979).
*1300 Appellee argues that the deceased insured is bound by the statements contained in the form, as he is presumed to have read it before signing. However, in the case of an insurance contract, when the insurance company has prepared the policy and the application form, and the insured is asked to do nothing more than sign it, the insurer cannot avoid liability on grounds that the information contained in the application was not correct. National Life & Accident Ins. Co. v. Vaughan, 32 So.2d 490 (La.App. 1st Cir.1947); Cloud v. Security General Life Ins. Co., 352 So.2d 406 (La.App. 3d Cir.1977).
Here, the defendant presented no evidence showing an actual intent to deceive. Mrs. Swain's uncontradicted testimony at trial shows that Mr. Swain was asked no questions about his health, although he was on crutches at the time; that he did not fill in the form or supply any information; and that he was not asked to nor did he read the application before signing it. Since Mr. Swain was never asked to read or fill in the form, and was apparently unaware of the contents of the form he signed, there is insufficient evidence for a reasonable factfinder to find an intent to deceive. Cloud v. Security General Life Ins. Co., supra.

SOUND HEALTH
Mrs. Swain next argues that the trial court erred in denying recovery based on the policy's clause[2] pretermitting coverage unless the applicant is in sound health on the day of the issuance of the policy.
Louisiana courts have recognized that sound health clauses in life insurance policies are not contrary to public policy and are enforceable. Martin v. Security Indus. Ins. Co., supra.
Here, the evidence necessarily supports a conclusion that this clause was waived by the agent's actions. An agent authorized to issue policies of insurance may bind the issuing company by waivers, representation, and other acts within the scope of his business, unless the insured had notice of a limitation of the agent's power. Monroe Air Park # 1 v. American Aviation & General Insurance Co., 41 So.2d 795 (La.App. 2d Cir.1949). Acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privileges. Comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202 (1962); Quinones v. Life & Casualty Ins. Co. of Tennessee, 24 So.2d 270 (La.1945); Monroe Air Park # 1 v. American Aviation & General Insurance Co., supra; Bonadona v. Guccione, 362 So.2d 740 (La.1978). Notice of facts which would cause a reasonable man to inquire further imposes a duty of investigation upon the insurer, and failure to investigate has been held to constitute a waiver of all powers or privileges which a reasonable search would have uncovered. Comment, Waiver and Estoppel in Louisiana Insurance Law, supra.
In Flaherty v. Gulfco Life Ins. Co., 327 So.2d 436 (La.App. 3d Cir.1976), writ denied, 329 So.2d 430 (La.1976), the insured was issued a credit life policy on October 3, 1973. The insured died on February 12, 1974 and the insurer denied coverage under the policy's "sound health" clause. Several years prior to the issuance of the policy the insured had a portion of his jawbone and upper palate surgically removed to excise a cancerous tumor. He subsequently had to be fed by tubes inserted through his nose, and consequently lost weight over the years. Periodic examinations revealed that the cancer was arrested. The insurer's agent made no inquiries into the insured's health, past or present, and the insured was not required to have a medical examination, although the agent knew the insured was in the hospital at the time the policy was issued. The prospective insured paid the premiums due and he and his wife were led to believe that they had insurance coverage. The third circuit refused to allow *1301 the insurer to escape liability on the basis of a sound health clause in its policy when its agent issued credit life insurance without either inquiring about the health of the prospective insured or requiring him to submit to a medical examination.
The court in Key v. Cherokee Credit Life Ins. Co., 298 So.2d 892 (La.App. 3d Cir. 1974), held that the insurer was estopped from denying coverage based on a clause requiring "insurable health" when no application was required, the agent made no inquiries with regard to the insured's health, and the agent assured the insured that a credit life insurance policy would be issued.
In Coolman v. Trans World Life Ins. Co., 482 So.2d 979 (La.App. 3d Cir.1986), the court found another waiver. There, the agent was aware that the insured's medical condition was not normal, yet she did not inquire into the insured's health; she stated that the insured was insurable if he was "alive and breathing" at the time the policy was issued. The court refused to allow the insurer to escape liability by urging false representations and reliance on the sound health clause.
Here, Mr. Swain was on crutches the entire time he was in the dealership, and did not venture even as far as the parking lot to examine the cars. Despite having this visible evidence to put him on notice that Mr. Swain's health was questionable, the agent did not question Mr. Swain about his health, and did not require a medical examination. The agent did not ask Mr. Swain to read the form and answer the questions, nor did the agent read the form to Mr. Swain or inform him that he could be excluded on the basis of unsound health.[3] He simply requested that Mr. Swain sign the application along with the other loan papers. The insurer cannot deny coverage on the basis of a "sound health" provision when its agent had reason to suspect that the insured's health was dubious, yet accepted the premiums and issued the policy without requiring the insured to read and fill out the application form and without initiating further inquiry or investigation into the insured's condition. The trial court's holding to the contrary was erroneous.
Further, we find that the defendant failed to carry its burden of showing that Mr. Swain was not in good health on the day that the policy was issued.
The courts in this state require clear and convincing evidence that the insured was not in sound health on the effective date of the policy before rendering a life insurance policy ineffective on the basis of a "sound health" clause. Martin v. Security Indus. Ins. Co., supra; Ryan v. Security Indus. Ins. Co., 386 So.2d 939 (La.App. 3d Cir.1980). Permissible inferences which may be made in ordinary cases may not be made in cases involving "sound health" policies. Ryan v. Security Indus. Ins. Co., supra.[4]
In McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1st Cir. 1982), writ denied, 430 So.2d 94 (La.1983), the defendant insurer attempted to deny coverage on the basis of a "good health" clause in the life insurance policy. The policy was issued January 15, 1978. The insured died October 25, 1978 of a mediastinal shift, ruptured lung cyst, and bronchial asthma. The medical records introduced into evidence showed that the insured, a known asthmatic since 1963, had been admitted to the hospital for three days in October 1977 *1302 for bullous emphysema with mild pulmonary fibrosis and status asthmaticus; that he had follow-up examinations in November and December of 1977 and on January 4, 1978; and that he was readmitted to the hospital May 11 through 20, 1978 for upper respiratory tract infection and chronic obstructive pulmonary disease. However, there was no expert medical testimony in the record as to whether or not his medical condition on the day the policy was issued could be classified as good, fair or bad health. The court concluded that since the insured was employed immediately prior to the effective date of the policy and there was no medical evidence to classify or explain the insured's medical condition on the effective date of the policy, the trial judge did not err in finding that the insurer had failed to prove by clear and convincing evidence that the insured was not in good health.
Similarly, this court reversed a trial court's judgment that denied coverage based on a finding of false representations made in the application. We then found coverage was not precluded under a June 1, 1976 insurance policy's "sound health" provision when the insured was hospitalized in 1972 for acute myocardial infarction and a duodenal ulcer, and again in 1974 for coronary insufficiency with anginal episodes, old myocardial infarction, and a duodenal ulcer. We held that the record of medical treatment was too far removed from the issuance of the policy to allow an inference to be drawn in the absence of medical testimony to evaluate the insured's condition as of that date. Martin v. Security Indus. Ins. Co., supra.
In Ryan v. Security Indus. Ins. Co., supra, the life insurance policy was issued on October 15, 1977, but there was no evidence showing when the policy was delivered (the operative date under the good health clause). It was shown that the insured was not in good health as of December 18, 1977, but the court concluded that the insurer failed to prove by clear and convincing evidence that the insured was not in good health on the date of delivery because the date was not shown. The court further found that the fact that the insured was paralyzed from the waist down at the time the policy was written did not prove she was not in good health. The trial court's decision awarding judgment to the plaintiff was affirmed.
The medical records of Mr. Swain's prior hospitalizations and his subsequent medical sufferings were introduced at trial.[5] However, there is no expert medical testimony in the record that would classify Mr. Swain's health on the day the policy was issued. Mr. Swain was in good enough health to have undergone hip surgery less than a month before purchasing *1303 the insurance, and to have "tolerated the surgery well," according to the medical records. The only evidence of Mr. Swain's condition on the day the policy was issued was Mrs. Swain's testimony that he was doing very well.
The trial judge was clearly wrong in not finding that the defendant did not bear its burden of proving by clear and convincing evidence that Mr. Swain was not in sound health on the day the policy was issued. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); McClelland v. Security Indus. Ins. Co., supra.
We must reverse that portion of the judgment which denied Mrs. Swain recovery of the proceeds of the policy.

PRE-EXISTING CONDITION
Defendants also argue that recovery is precluded because Mr. Swain's death was caused by pre-existing conditions not covered by the credit life policy.[6]
The death certificate states that the immediate cause of death was "Carcinoma of lung with hepatic mestastases."[7] Under the heading "other significant conditions" ischemic heart disease is listed.
There is no doubt that Mr. Swain had been diagnosed with heart disease prior to purchasing the policy; however, this was not the cause of death. The immediate cause of death, lung cancer, was not diagnosed until Mr. Swain's hospitalization of October 21 through November 4, 1985, after the policy was purchased. There was no evidence, either by medical records or testimony, showing that Mr. Swain had contracted lung cancer before the credit life insurance policy was issued. In light of the complete absence of any evidence concerning this crucial fact, we must conclude that the defendant did not bear its burden of showing that it was more probable than not that Mr. Swain's death resulted from a condition that existed prior to the effective date of the policy.

LACK OF PROCEDURAL CAPACITY
Defendant for the first time suggests in brief to this court that appellant did not establish that she was a beneficiary of the credit life policy, because no acceptable evidence from Texas, the Swains' domicile, was introduced showing that Mrs. Swain was beneficiary and executrix under Mr. Swain's will.
The claimant's proof of death form lists Mrs. Swain as the second beneficiary. Mrs. Swain testified that she was the beneficiary under Mr. Swain's will, had been named benificiary of his estate by a Texas court, and has received the property of his estate, including the car on which she continued to make payments. While defense counsel objected to certain documentary evidence as not properly certified, he made no objection to Mrs. Swain's testimony.
Mrs. Swain's petition states she is suing for and on behalf of the Estate of Billie Swain. When a plaintiff sues as a legal representative his authority or qualification is presumed unless challenged by the defendant by the timely filing of the dilatory exception. LSA-C.C.P. art. 700; Jackson v. Dickens, 236 So.2d 81 (La.App. 1st Cir. 1970). A challenge to a plaintiff's authority to act to assert a claim is a defense properly raised by the dilatory exception pleading lack of procedural capacity. LSA-C.C.P. art. 926; City of Alexandria Through Snyder v. Lanier, 446 So.2d 547 (La.App. 3d Cir.1984). When defendant did not plead this dilatory exception prior to answering the plaintiff's petition, he *1304 waived it. Art. 926; Frazer v. Day, 307 So.2d 733 (La.1975).

PENALTIES
Mrs. Swain has prayed for penalties against the defendant in the event that she prevails. LSA-R.S. 22:656 provides that when an insurer fails to settle a death claim within 60 days after the date of receipt of due proof of death, without just cause, the amount due bears interest of 8% from the date of receipt of due proof until paid.
When an insurer chooses to deny coverage to the insured in reliance on a legal or factual defense which investigation would prove to be unsubstantial, the insurer will be held liable for statutory penalties. Ryan v. Security Indus. Ins. Co., supra; Cloud v. Security General Life Ins. Co., supra.
An investigation of its own agent's actions in issuing the policy would have revealed to the defendant that its defenses were spurious. Under these circumstances, the insurer was arbitrary and capricious in not paying the claims within 60 days from date of receipt of the death certificate.
The judgment below is amended to read:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Joyce Swain for and on behalf of the Estate of Billie J. Swain, and against the defendant, Life Insurance Company of Louisiana, in the amount of $14,443.88 plus interest of 8% per annum from date of receipt of due proof of death until paid.
Costs of this appeal are assessed to the appellee.
REVERSED AND RENDERED.
ON APPLICATION FOR REHEARING
Before HALL, NORRIS, LINDSAY, MARVIN and SEXTON, JJ.
Rehearing denied.
NOTES
[1] "In order to induce Life Insurance Company of Louisiana to effect this insurance, I hereby declare that to the best of my knowledge and belief, I am in sound health and gainfully employed, and that my spouse, if Joint Life Insurance is applicable for above, is in sound health and either gainfully employed or performing the normal duties of a housewife and I further declare that within the last three (3) years, I have not had medical or surgical treatment or advice for Cancer, Circulatory or Heart Condition, or Nervous Disorder or Diabetes, and I have not been hospitalized or attended by a physician and that my spouse, if Joint Life Insurance is applied for above, has not within the last three (3) years had medical or surgical treatment or advice for Cancer, Circulatory, or Heart Condition or Nervous Disorder or Diabetes and has not been hospitalized or attended by a physician except:

Date and course of sickness or operation:____ Doctor's Name____________Address_____________ City_______________,State_______________"
[2] "The insured named above must be alive, in sound health and gainfully employed ... before the benefits of this certificate may be attached."
[3] In fact, the record shows that of the $630.28 that Mr. Swain paid for the premium, $409.68 was retained by Red River as an agent's fee. The lucrative nature of this arrangement for Red River may account for the auto salesman's reluctance to probe into details that might invalidate the policy and revoke the fee. This would serve to explain the agent's eagerness to sell the policy and his failure to ask crucial health questions or request that Mr. Swain read and respond to the application. This eagerness is also reflected in the agent's ready waiver of the policy's requirement that the insured be gainfully employed. The space on the form asking for the insured's employment was filled in as "Retired", and the policy issued, in spite of the policy's requirement that the insured be gainfully employed before the benefits of the policy would attach.
[4] See Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
[5] June 21July 21, 1982

The final diagnosis was acute ethanolic hepatitis; probable Laennec's cirrhosis; ascites [effusion and accumulation of serous fluid in the abdominal cavity]; gastroesophageal reflux; and esophageal stricture.
August 1724, 1982
Mr. Swain was admitted to the hospital and treated for ascites secondary to Laennec's cirrhosis.
October 29November 2, 1982
Mr. Swain was admitted for diuresis [increased excretion of urine] due to increasing ascites.
August 2630, 1983
Mr. Swain was admitted to the hospital for evaluaton due to difficulty when swallowing and postprandial indigestion. The final diagnosis was a peptic ulcer and cirrhosis.
April 2123, 1985
Mr. Swain was admitted to the hospital for evaluaton of an unstable angina. He underwent left heart catheterization.
May 2831, 1985
Mr. Swain entered the hospital because of shortness of breath, weakness, and fatigue. The final diagnosis was dyspnea [difficulty breathing] of uncertain etiology; weakness and nausea possibly secondary to his medications; and hyperkalemia [excess potassium] secondary to his medications.
June 1729, 1985
Mr. Swain was admitted to the hospital for chest discomfort, but no evidence of cardiac difficulty was found. All tests and workups performed were characterized as normal or "unremarkable." During this hospitalization his hip surgery was performed. His recovery was considered normal.
August 22September 1, 1985
Due to continued pain in his hip, Mr. Swain underwent a total hip replacement. He tolerated the operation well.
October 21November 4, 1985
Mr. Swain was diagnosed as having lung cancer.
[6] "The insurance afforded by this certificate does not cover any disability caused by or resulting from ... (5) Accident or sickness contracted by the insured debtor prior to the effective date of the certificate issued to him under this policy."
[7] Carcinoma is "a malignant new growth made up of epithelial cells tending to infiltrate surrounding tissues and to give rise to metastases".

Hepatic means "pertaining to the liver".
Metastases are "a growth of pathogenic microorganisms or of abnormal cells distant from the site primarily involved by the morbid process".
Dorland's Pocket Medical Dictionary, 23d ed. (Philadelphia: W.B. Sanders Co., 1982), 122-123, 320, 415.