**James E. CLARK, Plaintiff–Appellant, Cross–Appellee,**

v.

**GOLDEN RULE INSURANCE CO., Defendant–Appellee, Cross–Appellant.**

No. 89–4100.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1989.

Rehearing Denied Dec. 12, 1989.

Byron A. Richie, LeRoy H. Scott, Shreveport, La., for plaintiff-appellant cross-appellee.

Charles W. Salley, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, La., Charles R. Davis, Barry H. Powell, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendant-appellee cross-appellant.

Before THORNBERRY, GARWOOD, and DUHÉ, Circuit Judges:

THORNBERRY, Circuit Judge:

James E. Clark appeals the judgment of the district court denying his insurance claim for medical expenses on the grounds that coverage was precluded by a policy exclusion for preexisting conditions. Golden Rule Insurance Company (Golden Rule) files a cross-appeal alleging that the district court erred in refusing to rescind the policy for misrepresentation. We affirm the district court's judgment denying Clark's claim as preexisting condition, and remand the case for further consideration of the right to rescind the policy.

## FACTS

Appellant Clark seeks coverage under Golden Rule's insurance policy for $31,569.30 in medical expenses associated with a coronary bypass operation in January 1987. His medical history is as follows. In October 1980, appellant saw Dr. Pierre Blanchard, a specialist in internal medicine, because of some abdominal pains and chest tightness. Dr. Blanchard diagnosed the problem as digestive in origin, but his alternative diagnosis was possible occult coronary disease. Laboratory results from the visit determined that appellant had a blood cholesterol level of 531 and a triglyceride level of 400. Expert medical testimony established that current standards recommend that these levels not exceed 200. Subsequent tests in 1981 revealed cholesterol levels ranging as high as 622 and triglyceride levels as high as 2,085.

Appellant began to see Dr. Eddie Johnson, a general practitioner, on October 21, 1981, at which time appellant's cholesterol level was 380 and his triglyceride level was 700. Dr. Johnson prescribed Lopid to lower the triglyceride level, and put appellant on a low fat diet. By October of 1985, appellant had visited Dr. Johnson nine times to have his cholesterol and triglyceride levels checked, but these levels remained far above their recommended range.

In October of 1985, Dr. Johnson decided to refer appellant to Dr. Anil Chhabra, a specialist in cardiovascular diseases, for a cardiac stress test. Dr. Chhabra, along with radiologist Dr. Clif Coffman, conducted this test and a myocardial perfusion scan on November 1, 1985. During the test, appellant was only able to get his heart rate up to 66 per cent of the desired "maximal" rate, which is the desired rate for ensuring that the heart is working hard enough for an accurate test. Although Dr. Chhabra testified that appellant complained of mild chest tightness during the stress test, both the stress test and myocardial scan failed to reveal any indication of coronary disease.

On August 25, 1986, appellant completed an application for medical insurance with Golden Rule. Questions 7 and 8 on the application stated:

7. Has any person on this application, within the last 10 years, had any indication, diagnosis or treatment of: (Circle conditions)

 (a) high blood pressure, heart disorder, stroke, or other cardiovascular disorder?

 \*     \*     \*     \*     \*     \*

 (f) any other disease, disorder (including alcohol or drug problems) or injury in the last 5 years?

8. Has any person on this application consulted or been treated by a doctor within the last 3 years?

If the applicant checked "Yes" to any of these questions, he was required to identify the "condition or disorder involved, dates and results of treatment, [and] name and location of doctor or hospital."

Appellant answered question 7(a) yes, but only circled high blood pressure, and answered no to 7(f). As for the details required for question 7(a), appellant specified that his high blood pressure was "under control," and he gave Dr. Johnson's name and address. Appellant also answered yes to question 8, and indicated that Dr. Chhabra had performed an "exam and stress test" on November 1, 1985. Appellant did not disclose his history of high blood cholesterol and triglyceride levels on the application.

On September 5, 1986, John D. Tracy of Golden Rule called appellant and asked some questions from Golden Rule's "Blood Pressure Questionnaire." Based on appellant's answers, Tracy felt that appellant's blood pressure was under control, but he increased the deductible due to the history of high blood pressure. The policy became effective on October 1, 1986.

In November of 1986, appellant experienced chest pains while on a hunting trip with his new physician, Dr. Jack Coussons. Because these pains persisted, appellant went to Dr. Coussons on January 16, 1987. According to Dr. Coussons's notes, appellant stated that he had been having these pains for the past eight to ten months.

Treadmill and EKG tests were abnormal, and appellant was admitted to the hospital so that Dr. Chhabra could perform some additional tests.

According to Dr. Chhabra's notes, appellant gave a history of chest pains for the past year. A cardiocatheterization revealed severe blockage in all three arteries to the heart. As a result, coronary bypass surgery was performed by Dr. Dale Stevenson on January 27, 1987. Dr. Stevenson testified that appellant had told him that the chest pains did not begin until November of 1986.

On February 25, 1987, appellant filed a claim with Golden Rule, seeking to recover the surgery expenses. Golden Rule denied appellant's claim on the basis that it resulted from an undisclosed preexisting condition, and appellant filed suit in Louisiana court. The matter was removed to federal court based upon diversity jurisdiction. In a bench trial, the district court made certain findings of fact, based primarily on expert medical testimony, that appellant's condition began prior to coverage; that appellant received treatment for the condition within the twelve month period prior to coverage; and that appellant's condition was such that, in the opinion of a qualified physician, it produced symptoms that would cause an ordinary prudent person to seek treatment or diagnosis within the twelve months prior to coverage. These findings resulted in appellant's surgery expenses being excluded under the policy as a preexisting condition.

Appellant argues that these findings were erroneous. In addition, Golden Rule has filed a cross-appeal, contending the district court should have permitted it to rescind the entire policy based upon appellant's alleged misrepresentations in the policy application.

## DISCUSSION

We first note that under Louisiana law, "courts impose a strict burden on the insurer to prove that an exclusionary clause is applicable and, in [the] case of a health policy, that the alleged pre-existing condition did in fact pre-date the effective date

of the policy." *E.g., Hoffpauir v. Time Insurance Co.*, 536 So.2d 699, 702 (La.App. 3d Cir.1988); *Casey v. Proprietors Life Assurance Co.*, 470 So.2d 339, 340 (La.App. 5th Cir.1985). "The evidence must be 'certain and decisive, leaving no room for speculation or assumption.'" *McCord v. Time Insurance Co.*, 521 So.2d 558, 560 (La.App. 1st Cir.1988) (quoting *Dorsey v. Board of Trustees*, 482 So.2d 735, 737 (La.App. 1st Cir.1985), *writs denied*, 486 So.2d 735, 736 (La.1986)). Although the insurer's burden is great, we also note that the appellant's attack on the district court's factual findings are subject to the difficult hurdle of the clearly erroneous rule. *See* Fed.R. Civ.P. 52(a). A finding will not be considered clearly erroneous unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573–74, 105 S.Ct. at 1511, 84 L.Ed.2d 518. With these burdens and standards in mind, we now turn to the issue of whether coverage was precluded under the exclusion for preexisting conditions.

## I. *Preexisting Condition*

In the Golden Rule policy, a preexisting condition is defined as a condition:

(1) for which the Covered Person received medical advice or treatment within the 12 months immediately preceding the date he or she became insured under the policy; or

(2) which, in the opinion of a qualified physician:

(a) began prior to the date of the Covered Person's coverage under the Policy; and

(b) produced symptoms which would cause an ordinarily prudent person to seek diagnosis or treatment within the 12

months immediately preceding the Covered Person's effective date of insurance under the Policy.

(Emphasis omitted). Although coverage will be precluded if either definition of a preexisting condition is met, the district court found that coverage was excluded under both definitions (1) and (2). We first consider the exclusion under definition (2).

■ Under this definition, diagnosis of a preexisting condition is not necessary if, in the opinion of a qualified physician, symptoms of that condition manifest themselves in such a way that an ordinarily prudent person would seek treatment or diagnosis. As for the presence of the condition itself, appellant has conceded that coronary artery disease existed prior to the effective date of coverage under the policy. Thus, the only issue left is whether, in the opinion of a qualified physician, the coronary artery disease produced "symptoms which would cause an ordinary prudent person to seek diagnosis or treatment." Relying upon the medical history that appellant gave to his doctors, the district court found that appellant was having "chest pains, or at the very least, tightness in the chest" prior to the policy's effective date. The district court also found that chest pain or tightness is a symptom of coronary blockage, and that this symptom would cause an ordinarily prudent person to seek diagnosis or treatment.

We cannot hold that these findings were clearly erroneous. Dr. Coussons, appellant's internal medicine doctor, testified that his notes on January 1987 indicated that appellant gave him a history of *eight to ten months* of chest pain. Appellant's only rebuttal to this report is that Dr. Coussons conceded that because he wears a hearing aid, he might have misunderstood appellant. But Dr. Chhabra, appellant's cardiologist, also testified that in January 1987 appellant complained of a history of chest pain and tightness off and on for *one year*. Both of these histories support the finding of chest pain or tightness prior to the policy's effective date on October 1, 1986. Other evidence of chest pain includes the radiologist's report from the No-

vember 1985 stress test, which indicated that appellant had a clinical history of chest pain. Furthermore, Dr. Chhabra testified that during this stress test, appellant complained of mild chest tightness. This evidence provides sufficient support for the district court's finding that appellant suffered from chest pains prior to the effective date of coverage.

We also reject appellant's alternative argument that even if there were chest pains prior to coverage, they would not cause appellant to seek diagnosis or treatment. Appellant argues that the negative stress test November 1985 was a "clean bill of health" that dissuaded him from seeking medical help. But "the opinion of a qualified physician" is the test under the policy, and Drs. Coussons, Chhabra, Stevenson, and Lutz all testified that an ordinarily prudent person with chest pains and high cholesterol and triglyceride levels would seek diagnosis or treatment.

Therefore, we hold that the district court did not err in excluding coverage on the grounds that appellant had a preexisting condition. Because we find that the insurer sustained its burden under this definition of preexisting condition, it is not necessary to consider the alternative definition of preexisting condition.

## II. Full Disclosure of a Preexisting Condition

■ Even though appellant's coronary artery disease qualifies as a preexisting condition, the policy still provides coverage if the preexisting condition was fully disclosed. Although appellant failed to reveal that he had coronary artery disease, that was understandable given the fact that he was unaware of the condition at the time he applied for insurance. The issue here is whether appellant should have revealed his abnormally high cholesterol and triglyceride levels.

First, appellant argues that there was full disclosure because he answered all of the questions on the application completely and accurately. The medical history that appellant provided on the insurance application was that he was 63 years old and had

high blood pressure, a problem that he stated was "under control." In response to whether he had "consulted or been treated by a doctor in the past 3 years," appellant answered yes, but only stated that he had an "exam and stress test" conducted by Dr. Chhabra in November 1985. Despite questions asking if he had any "heart disorder, stroke, or other cardiovascular disorder," or "any other disease, disorder ... or injury in the last 5 years," appellant did not reveal his problem of high cholesterol and triglycerides.

Once again, the district court was not clearly erroneous. The record reveals that appellant had a history of abnormally high cholesterol and triglyceride levels, and that this was a significant medical problem of which he was well aware. Since 1981, for example, appellant has been taking daily prescription medication for this problem. Also, his doctors have ordered numerous laboratory tests over the years to monitor the condition. Despite these efforts, appellant has been unable to control his high cholesterol and triglyceride levels. These facts leave no doubt that appellant had a serious medical condition that should have been disclosed.

We also hold that there was sufficient evidence establishing that high levels of cholesterol and triglycerides are indicative of coronary artery disease. In making this finding, the district court relied on expert medical testimony, including that of Dr. Lutz, who testified that if you took a test tube of blood with the appellant's high cholesterol and triglyceride levels, and spin it down, the blood at the top of the tube would look like chicken fat. Also, Dr. Johnson testified that the reason he ordered the cardiac stress test in November 1985 was appellant's high blood fat. Given these facts, we cannot find that the district court was clearly erroneous in holding that appellant should have disclosed his high cholesterol and triglyceride levels.

■ Second, appellant contends that Golden Rule either waived its right to deny his claim or was estopped from so doing because the information supplied in the insurance application was sufficient enough to impose on Golden Rule a duty to investigate the facts further. Under Louisiana law, "[n]otice of facts which would cause a reasonable man to inquire further imposes a duty of investigation upon the insurer, and failure to investigate has been held to constitute a waiver of all power or privileges which a reasonable search would have uncovered." *Swain v. Life Insurance Co.*, 537 So.2d 1297, 1300 (La.App. 2d Cir.), *writ denied*, 541 So.2d 895 (La.1989); *World Insurance Co. v. Pipes*, 255 F.2d 464, 468–69 & n. 4 (5th Cir.1958) (construing Louisiana law and setting out a similar test for estoppel); *see generally* 16B J. Appleman & J. Appleman, Insurance Law and Practice, § 9081 (1981). In either case, before an insurer will be charged with knowledge of facts available by investigation, there must be a reason or cause for further investigation, and the duty to inquire further must emanate from some fact or information in the insurer's possession. 16B J. Appleman & J. Appleman, *supra*, § 9088, at 572 (estoppel); *cf. id.* § 9086, at 546–47 (waiver). As the party asserting waiver and estoppel, the appellant bears the burden of proof. *See Tate v. Charles Aguillard Insurance & Real Estate, Inc.*, 508 So.2d 1371, 1375 (La.1987). This burden was not met.

We first point out that in this case Golden Rule did conduct a further investigation when it inquired about appellant's disclosure of his high blood pressure. Thus, the only other information on which a duty of further inquiry might be based is the information that appellant had an "exam and stress test" by Dr. Chhabra in November 1985. Unlike the cases on which appellant relies, however, an "exam and stress test" is not the type of information that would lead a reasonable man to make further inquiries.

In *Swain*, for example, the court held that the insurer waived its right to enforce a provision requiring that insured be in "sound health" on the day the policy is issued. But that waiver was based on the fact that the insurance agent made no inquiries about the insured's health, even though the insured was on crutches when

he signed the application form. *Swain,* 537 So.2d at 1301. Similarly, in *Pipes* the court held that the insurer was estopped from using a misrepresentation defense to deny benefits for insured's death from kidney disease. In that case, however, the insured admitted on the application that he had a history of kidney trouble. Although he claimed that there were "no after effects," he also stated that albumen had been found in his urine, which the court noted was a "triple alert to insurance companies" of kidney problems. *Pipes,* 255 F.2d at 468–69. Absent more specific information of this nature, we hold that the district court was not clearly erroneous in finding that Golden Rule had no duty of further inquiry.

*III. Rescission of the Policy*

Finally, we turn to Golden Rule's cross-appeal pertaining to the right to rescind the policy. Although the district court found that appellant was unaware that he had coronary artery disease, appellant was aware of his abnormally high cholesterol and triglyceride levels. Golden Rule argues that the failure to disclose this problem constituted an intentional and material misrepresentation, which is grounds for an insurer to rescind a policy. *See* LSA-R.S. 22:619(B). Before the insurer can rescind a policy, it has the burden of proving that insured made (1) a false statement (2) with intent to deceive, and (3) that the false statement materially affected the risk assumed by the insurer. *E.g., Coleman v. Occidental Life Insurance Co.,* 418 So.2d 645, 646 (La.1982); *Hoffpauir v. Time Insurance Co.,* 536 So.2d 699, 702–04 (La. App. 3d Cir.1988); *Jones v. United Savings Life Insurance Co.,* 486 So.2d 1110, 1113–14 (La.App. 2d Cir.1986).

The district court apparently never reached this issue, finding instead that the exclusion of appellant's claim was dispositive on the rescission claim. But this finding was in error; the failure to reach this issue left the policy in force. Therefore, because the resolution of this issue requires further determination of facts, we remand this issue to the district court for further consideration.

CONCLUSION

For the foregoing reasons, the judgment of the district court denying appellant coverage is AFFIRMED. Golden Rule's cross-claim for rescission is REMANDED for further consideration.