Maryann J. VERSHAW and Thomas Vershaw, Plaintiffs–Appellants,

v.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 91–3459.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1992.

Decided Nov. 9, 1992.

Edgar A. Blumenfeld, William C. Coughlin (argued), Chicago, Ill., for plaintiffs-appellants.

Thomas H. Fegan, William G. Beatty (argued), Thomas J. Lyman, III, Johnson & Bell, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

In February 1991 Maryann Vershaw and her husband Thomas filed an amended complaint against Northwestern National Life Insurance Company, which had issued a group health and accident policy to Mrs. Vershaw's employer, the National Corporation for Housing Partnerships. This policy, dubbed "the Plan", in the amended complaint, provided medical coverage for the corporation's employees and their dependents.

According to this pleading, Northwestern issued an insurance certificate providing coverage to Mrs. Vershaw and her husband which was in force when Mr. Vershaw was hospitalized for heart surgery in May 1989, with expenses amounting to $43,883.50. The plaintiffs sought recovery of this amount under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 *et seq.*), commonly known as ERISA. Their suit was based on Section 502 of ERISA (29 U.S.C. § 1132), which authorizes the recovery of benefits due under employee benefit plans.

In its answer, Northwestern asserted that it was not obligated to pay medical expenses arising from pre-existing conditions, except in three inapplicable instances.[1] Subsequently, Northwestern successfully filed a motion for summary judgment because Mr. Vershaw had a pre-existing cardiac condition for which he had been hospitalized and medically treated. He was first diagnosed with coronary artery disease in 1985 when he was admitted to a hospital complaining of chest pain. A 1985 physician's report described Mr. Vershaw as suffering from "two vessel coronary artery disease" (R. Item 30, Exhibit 2). This condition apparently persisted until the 1989 by-pass surgery giving rise to this dispute, for Mr. Vershaw's doctors continuously prescribed a daily dose of Inderal LA, a long-acting beta blocker recommended for heart patients. Thus Judge Duff granted summary judgment to Northwestern on the ground that the pre-existing exclusion clause barred recovery. We affirm.

**Oral representations**

██ Prior to Thomas Vershaw's 1989 admission to Good Samaritan Hospital in Downers Grove, Illinois, his wife called a number on the "Check–In card"[2] which she

---

**1.** Mrs. Vershaw began working at the National Corporation for Housing Partnerships in February 1989 and her health benefits took effect in March. Under terms of the Plan, Northwestern was required to pay claims for pre-existing conditions after the employee had been enrolled for six months. Mrs. Vershaw had been enrolled for no more than three months when her husband had by-pass surgery. The Plan defined a

pre-existing condition as "any sickness or accidental injury for which you or your insured dependent received any medical treatment or advice, or took any medication before becoming insured for Major Medical Insurance."

**2.** Check–In is an independent service to review the length of a hospital stay and is not concerned with coverage. Defendant asserts that, since Check–In is independent, its agents cannot

had been issued in conjunction with her insurance coverage and was told that "everything was in order" for her husband's planned admission for surgery. On May 30, the day of the surgery, she made a second call to a Northwestern agent and was told "You did everything you were supposed to do." Assuming that these two phone calls constituted "oral representations of coverage," ERISA affords no remedy. As we recently held:

> One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications * * * [or suits] based on oral representations of coverage.

*Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (1992).[3] Though it is unfortunate that an insurance company's agent would lead a policyholder to believe that she was covered when she was not, the policies underlying ERISA require a preference for written over oral contract terms.

Estoppel

■ Estoppel is applicable to certain claims under ERISA. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). In asserting estoppel against Northwestern, plaintiffs rely on Northwestern's payment of a $3 bill for a May 1, 1989 prescription of Procardia and another $3 payment for a May 19, 1989 Inderal prescription, both shortly preceding the May 30, 1989 by-pass surgery (R. Item 30, Exhibit 4).[4] These payments supposedly show that Northwestern should be estopped from asserting the defense of Mr. Vershaw's pre-existing medical condition. Northwestern itself did not pay Perry Drug Stores, Inc. of Naperville, Illinois for these prescriptions. Instead, it paid "a bulk amount of money" to PCS, the administrator of Northwestern's prescription drug program, and in turn PCS paid all covered beneficiaries' prescription bills. The innocent payment of these two items did not constitute a misleading representation by Northwestern amounting to estoppel, since there is no showing that the Vershaws relied on them in assuming that Northwestern would pay for the surgery. *Id.* at 115.

■ Plaintiffs also rely on Northwestern's 80 percent payment of a $400 bill on May 15, 1989 for a treadmill or "cardiac imaging" test given Mr. Vershaw on May 4, 1989. However, when Northwestern learned of Mr. Vershaw's pre-existing coronary artery disease, it immediately investigated the claim and found that the bill had been paid by mistake. The insurance company requested a refund on August 23, 1989. Since Northwestern did not know of Mr. Vershaw's 1985 hospitalization for coronary artery disease until after it made the $400 payment, it was entitled to invoke the pre-existing condition clause. *Home for Crippled Children v. Prudential Ins. Co. of Am.*, 590 F.Supp. 1490, 1506 (W.D.Pa. 1984). In any event, this was not the kind of test that would require a reasonable insurer to make further inquiries. *Clark v. Golden Rule Ins. Co.*, 887 F.2d 1276, 1280–1281 (5th Cir.1989).

On May 26, 1989, a consultant, Dr. E. Palileo, rendered a second opinion at the request of the insurance company as to Mr. Vershaw's need for surgery. The consultant dictated a report that made note of Mr. Vershaw's history of coronary disease, but the report was not transcribed until May 30, 1989, the day of the surgery, and there is no evidence that Northwestern learned of the patient's pre-existing condi-

---

make binding representations for the company. However, defendant gave its customers no indication that Check–In was not part of Northwestern, and there is no way a policyholder would have known this. Therefore, the company must be responsible for statements made by those purporting to act as its agents. Such statements do not salvage the Vershaws' complaint since the written contract trumps the oral representations made by Check–In.

**3.** At the oral argument, plaintiffs' lawyer disclaimed any knowledge of *Pohl* whereas defense counsel said he had read it but nevertheless did not bring it to our attention.

**4.** These are the only pre-surgery prescriptions relied upon in plaintiffs' briefs. Two clearly irrelevant post-surgery prescription bills were also for $3 each. Since these four bills totaled only $12, it is not surprising that defendant has not requested reimbursement.

tion until after the operation. Therefore, estoppel is inapplicable. In fact, the only pertinent references in the record are Mrs. Vershaw's deposition testimony that on the day of the surgery she told an employee of Northwestern, *"we* had had a second opinion" (emphasis supplied) (p. 32 of Mrs. Vershaw's deposition, Exhibit to R. Item 25), and the deposition testimony of Mr. Vershaw's cardiologist who said that he assumed the insurance company had seen the consultant's report (p. 36 of Dr. Steven Schmitz's deposition, Exhibit D to R. Item 27), but no time was specified. Therefore the record does not show that Northwestern saw the Palileo report prior to the surgery.

Waiver

■ Plaintiffs assert that Northwestern waived its right to invoke the pre-existing condition clause. They concede that waiver only applies when there has been "the voluntary or intentional relinquishment of a known right." See, *e.g., Pitts v. American Security Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991). In asserting waiver, plaintiffs again rely on defendant's *de minimis* payment for two pre-hospitalization prescriptions and its payment of 80 percent of the $400 bill for the treadmill test. Neither event waived the pre-existing condition defense.

The $6 payment by PCS for the two prescriptions was surely too insignificant to constitute any waiver of a pre-existing condition defense to a $43,883.50 medical charge. Likewise, the treadmill test bill was paid by mistake and Northwestern sought to recover it as soon as it discovered Mr. Vershaw's pre-existing cardiac condition. Moreover, plaintiffs have not shown that this test was sufficient to alert defendant to Mr. Vershaw's prior coronary artery disease.

For the foregoing reasons, the district judge was entitled to conclude that the coverage exclusion asserted by Northwestern applies. The summary judgment is affirmed.