**John TORMEY, Plaintiff,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**No. 96 C 7978.**

United States District Court, N.D. Illinois, Eastern Division.

July 30, 1997.

---

J. Peter Martin, Robert C. Von Ohlen, Jr., Kaplan, Begy & von Ohlen, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

In this action plaintiff John Tormey charges that defendant General American Life Insurance Company wrongfully denied him medical coverage due to a preexisting condition clause in his insurance plan. Tormey is seeking a declaratory judgment to the effect that General American is liable for his medical expenses (count I), and asserting claims of estoppel (count II), and bad faith (count III).[1] General American moves for summary judgment on the grounds that ERISA preempts Tormey's state law claims and that Tormey received all the benefits he is entitled to receive under the insurance plan. General American further maintains that summary judgment is appropriate because there is no legal or factual support for an ERISA estoppel claim. For the following reasons, General American's motion for summary judgment is granted.

### RELEVANT FACTS

The following facts are taken from the statements of fact submitted by the parties pursuant to Local General Rule 12, and the responses thereto as well as other pleadings and exhibits submitted to the court in connection with the pending motion. John Tormey was a maintenance man at Tinley Court Retirement Home in Tinley Park, Illinois. Tinley Court provided medical coverage to its employees through Principal Mutual Life Insurance Company (hereafter known as the Principal–Tinley plan). (Rule 12(M) ¶ 4). When Tormey stopped working at Tinley Court in January 1995, he elected to extend his medical coverage under the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161, et seq. (Id. ¶ 5). Tormey received COBRA benefits until June 30, 1995. (Id. ¶ 8).

On March 15, 1995, Tormey began working as a maintenance man at M. Meyers Properties (hereafter known as Meyers). Meyers provided group medical coverage through Principal Mutual Life Insurance Company (hereafter known as the Principal–Meyers plan). (Id. ¶ 6). The Principal–Meyers Plan contained a 90–day probationary period and Tormey's coverage began on June 12, 1995. (Id. ¶ 7). Tormey terminated his COBRA benefits shortly thereafter. (Id. ¶ 8). In August of 1995, however, Tormey's supervisor, Christina Epple, informed him that effective September 1, 1995, Meyers would have a new group plan issued by General American Life Insurance Company. The General American plan and the Principal–Meyers plan were paid for by Meyers at no cost to its employees. (Id. ¶ 9).

---

1. Tormey originally filed this action in the Chancery Division of the Circuit Court of Cook County, Illinois. General American filed a notice of removal, alleging that because this claim is governed by ERISA, it presents a federal question under 29 U.S.C. § 1144. General American also asserted that the claim belongs in federal court pursuant to 28 U.S.C. § 1332 by virtue of the complete diversity of citizenship between the parties and the amount in controversy. The action was removed to this court on December 5, 1996.

Catherine Boxall, an accounts representative from General American, visited Meyers in August 1995 to familiarize Tormey and four of his colleagues with General American's medical coverage plan. (*Id.* ¶ 17). Boxall defined the plan's preexisting condition clause for the group and addressed any concerns that the employees had regarding the provision. (*Id.* ¶ 18). Tormey explained that he had heart attacks in November 1993 and May 1995 and asked Boxall if that would affect his coverage.[2] Boxall asked Tormey if he was under a doctor's care and Tormey replied that he was not, although the parties disagree about the precise wording of Boxall's question. Boxall claims she asked Tormey if he had been under a doctor's care within the past three months. (*Id.* ¶ 18 n. 3). Tormey's deposition contains conflicting statements. At first, Tormey maintained Boxall asked if he was *previously* under a doctor's care. However, he later states that Boxall asked if he was *presently* under a doctor's care (emphasis added). (Pl.'s Dep. at 55–56, 60–61). In any event, Tormey claims that Boxall told him that his previous heart attacks were not preexisting conditions and that he would be covered under the plan. Therefore, Tormey did not investigate any alternative medical coverage or seek reinstatement of his COBRA benefits. (Rule 12(M) ¶ 20). Tormey's coverage under General American began on September 1, 1995. (*Id.* ¶ 9).

John Tormey suffered his third heart attack on September 23, 1995 and three days later he had heart bypass surgery. (*Id.* ¶ 10). As a result, Tormey incurred numerous medical expenses, totaling $66,594.70. (*Id.*). In the ten months following Tormey's heart attack, General American sent Tormey sixteen invoices indicating that it had paid for various medical services ranging from $12 to $380.[3] (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 10). The invoices submitted by General American were labeled; a majority of them were for X-rays, laboratory tests with cardiovascular physicians, and appointments with Tormey's cardiologist, Dr. Eric Teplitz. (*Id.*). On October 15, 1996, General American responded to an invoice from Christ Hospital for fees totaling $28,440.75 by stating, "This claim has been sent for pricing." (*Id.* at 11).

General American investigated Tormey's claim and discovered his two previous heart attacks. (Rule 12(M) ¶ 14). Following each of the first two heart attacks, Tormey underwent an angioplasty. (*Id.*). After his second heart attack, Tormey's treating cardiologist, Dr. Eric Teplitz, prescribed four heart medications (Coumadin, Norvasc, Zestril, and Lopid), which Tormey took on a daily basis between May 1995 and September 23, 1995. (*Id.* ¶ 14). In addition, Tormey had office visits with Dr. Teplitz for his heart condition on May 12, 1995, June 7, 1995, and June 26, 1995.[4] (*Id.* ¶ 14). Based on his medical history and the provisions in the medical coverage plan, General American concluded that Tormey was not eligible for benefits because his heart attack was a preexisting condition. (*Id.* ¶ 15).

General American's preexisting condition clause states:

You or your covered dependent has a "preexisting" condition if you or your covered dependent;

1. Has consulted a doctor;

2. Has taken prescribed medicine;

3. Is receiving or has received medical care for that condition in the three months before your coverage with this plan became effective.

Benefits will not be payable until one of the following occurs;

---

2. Tormey's medical expenses associated with his May 1995 heart attack were paid in full by the Principal–Tinley plan. (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 2).

3. General American sent 16 invoices to Tormey confirming coverage for approximately $3,082.05 of his medical expenses. (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 10; *see also* Pl.'s Ex. 4). However, General American alleges that it only paid $175 of these medical expenses. (Rule 12(M) ¶ 21).

4. As part of General American's investigation, Dr. Teplitz answered a questionnaire providing the dates of Tormey's office visits and general information concerning Tormey's prescribed medications. (Rule 12(M) ¶ 24; Donelli Aff., Def.'s Ex. 4, at 3).

1. You or your covered dependent has gone three months without treatment or medication for the preexisting condition or a related condition.

2. You or your covered dependent has been insured under this plan for twelve months in a row.

(*Id.* ¶ 11; *see also* General American plan, Def.'s Ex. 3 at 43). However, the applicable definition of a preexisting condition is derived from the Principal–Meyers plan because the General American plan also contains the following plan replacement provision:

The plan will pay benefits for the preexisting conditions (otherwise excluded under the Preexisting Condition Limitations provision), but only for the lesser of:

(a) the benefits provided under this plan without application of the preexisting conditions limitations; or

(b) the benefits provided under the prior plan.

(Rule 12(M) ¶ 12; *see also* General American's plan, Def.'s Ex. 3, at 12). Therefore, when General American determined that Tormey's heart problems were a preexisting condition, it did so under the definition from the Principal–Meyers plan:

A preexisting condition is a sickness or injury for which a person was confined or received medical treatment or service in the 90–day period before becoming insured for Medical Expense Insurance. No benefits will be payable for a preexisting condition until the earlier of:

-The date ending 90 consecutive days during which no confinement has existed or no treatment or service has been received for the preexisting condition;

-The date that a person has been insured for Medical Expense Insurance for at least 12 consecutive months and is Actively at Work (you) or not in a Period of Limited Activity (Dependent); and then benefits will be payable only with respect to confinement occurring after that date or to treatment or service received after that date. However, the preexisting conditions restriction will not apply to the first $2,000 of covered charges in the first 12 months that insurance is in force.

(Rule 12(M) ¶ 13; *see also* Principal–Meyers plan, Def.'s Ex. 2, at 28).

Due to Tormey's medical history and the interplay of General American's plan replacement provision with the preexisting condition clause in the Principal–Meyers plan, General American denied coverage for all but $2,000 of the medical expenses arising from Tormey's September 23, 1995 heart attack. (Rule 12(M) ¶ 15). Tormey received an invoice stating that his claim was denied on February 20, 1996. (Letter from Donelli to Tormey 2/20/96, Initial Disclosure Statement; *see also* Def.'s Ex. 6). On the back of the invoice (and every invoice submitted by General American) was a brief paragraph describing the opportunity to request a review of General American's decision. (Donelli Aff., Def.'s Ex. 4).

After Tormey's coverage was denied, his wife telephoned Joan Donelli, an agent of General American who reviewed the claim, to object to the decision. (Donelli Aff., Def.'s Ex. 4). Donelli then obtained various medical records, including Dr. Teplitz's office notes from Tormey's three previous visits, and forwarded the information to General American's home office in St. Louis, Missouri for a full review of the decision. (Rule 12(M) ¶ 25; *see also* Donelli Aff., Def.'s Ex. 4). The home office upheld Donelli's decision denying coverage of Tormey's third heart attack and General American informed Tormey that his coverage was denied in a letter dated March 19, 1996. (Letter from Donelli to Tormey 2/20/96; *see also* Def's Ex. 6).[5]

Tormey filed suit on November 7, 1996 seeking a declaration that General American is liable for his medical expenses, and also asserting claims of estoppel and bad faith. (Pl.'s Compl. 1516). On March 14, 1997,

---

**5.** Donelli, the plan administrator, has discretion to review Tormey's claim because the policy states that the plan administrator "shall have discretionary authority, shall determine eligibility for benefits, construe the terms of the plan and resolve any disputes which may arise with regard to the rights of any persons under the terms of the plan." (Def.'s Mot. in Supp. of its Mot. for Summ. J. at 7).

General American filed this motion for summary judgment on all counts.

## ANALYSIS

### A. Standard for Summary Judgment

Summary judgment is proper if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of material fact is present "if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might effect that outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The moving party has the burden to show that there is no evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Consequently, the evidence of the nonmovant must be believed, and all reasonable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

However, the nonmovant cannot rest on his pleadings, but must show that there is admissible evidence that supports his position. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). "The court may only consider evidence and statements that would be admissible at trial and that have probative force." *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 365 n. 14 (7th Cir.1987). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. ERISA Preemption

■ General American contends that ERISA preempts Tormey's declaratory judgment, estoppel, and bad faith claims. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).[6] It sets out various uniform standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare benefit plans. *Id.* at 91, 103 S.Ct. at 2896–97. ERISA's preemption clause, § 514, is interpreted broadly to effectuate Congressional intent.[7] *Id.* at 98, 103 S.Ct. at 2900. In this case, because of the nature of Tormey's state common law claims, they are completely preempted by another ERISA provision, § 502(a). *See Rice v. Panchal*, 65 F.3d 637, 644–45 (7th Cir.1995).

■ Section 502(a) of ERISA governs deprivation-of-benefits claims. Lawsuits that fall within this section are completely preempted by ERISA, and are recharacterized as arising under federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987).[8] Three factors are used to determine if a claim is within the scope of § 502(a): (1) whether the plaintiff is eligible to bring a claim under this section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law. *Rice*, 65 F.3d at 641, 644.[9] An example of a completely

---

6. Neither party contests that the plan is an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. § 1002(1), and that Tormey is a plan participant. 29 U.S.C. § 1002(7).

7. Section 514 of ERISA states: "The provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a).

8. Section 502(a) states: "A civil action may be brought—(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

9. "Complete preemption" under § 502 is distinguishable from "conflict preemption" which arises under § 514. *Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir.1995); *Jass v. Prudential Health Care Plan Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996). In conflict preemption, the federal law

preempted, § 502(a) suit is demonstrated in *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482 (7th Cir.1996).

In *Jass,* the plaintiff sued a registered nurse employed by her insurance company for alleged negligence in denying her medical treatment. The court applied the *Rice* factors and found that the plaintiff's negligence claim was in reality a § 502(a) denial-of-benefits claim completely preempted by ERISA, because the issue could not be resolved without interpreting the benefits contract. *Id.* at 1489–90.

Tormey's causes of action similarly fall within § 502(a). First, Tormey is a participant in the plan eligible to bring suit under § 502(a). Second, because General American denied coverage for his third heart attack, he is seeking to recover benefits under the plan. Third, because the plan's preexisting condition clause is the main issue in this case, the claim cannot be resolved without interpreting that provision's language. His allegations are therefore completely preempted under § 502(a)(1)(B) and must be recharacterized as arising under federal law.

Tormey battles ERISA preemption by asserting that General American waived its right to proceed under ERISA because the plan states that "the policy is delivered in Illinois and is governed by its laws." (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 4–6). The policy may be governed by Illinois law in general, but that cannot prevent ERISA preemption. One of the primary purposes of ERISA is to create uniform standards for employee benefit plans. *Shaw,* 463 U.S. at 99 & n. 20, 103 S.Ct. at 2901 n. 20 (citing various legislators' statements). Even if the plan is governed by Illinois law, that law is preempted to the extent that it is a law "relating to" an employee benefit plan, which is superseded by ERISA's § 514. *See* 29 U.S.C. § 1114(a); *see also Central States, S.E. & S.W. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.,* 53 F.3d 172, 174 (7th Cir.1995) (establishing that ERISA displaces any state law affecting employee benefit plans). Therefore, ERISA governs

Tormey's claim regardless of any private contractual agreement to waive federal law.

Although Tormey has never amended his original state court complaint to add any ERISA causes of action, since he has made several ERISA claims in the briefing of the pending motion, we will proceed to address the merits of Tormey's potential claims under ERISA. *See Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992).

## C. Estoppel Claim

■ We begin by analyzing the merits of Tormey's estoppel claim under ERISA. The estoppel claim is based on Boxall's oral representation that his previous heart attacks were not preexisting conditions. Estoppel may be applicable to ERISA claims under certain circumstances. *Black v. TIC Inv. Corp.,* 900 F.2d 112, 115 (7th Cir.1990). Unfortunately, Tormey's estoppel claim here is barred because the Seventh Circuit has held that oral modifications of ERISA plans are invalid. *Pohl v. Nat'l Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992); *see also Russo v. Health, Welfare, and Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 767 (7th Cir.1993) ("As a general rule, ERISA does not recognize oral modifications of a written benefit plan which precludes the use of estoppel principles to alter ERISA plans.").

One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plan as written. For this reason, suits based on oral representations are generally prohibited. *Pohl,* 956 F.2d at 128. The main objection to oral modifications is that they enable the plan to be "eroded by relatively low-level employees who in response to inquiries about the scope of coverage advise participants that a particular medical procedure is covered," even though the plan explicitly states that it is not covered. *Miller v. Taylor Insulation Co.,* 39 F.3d 755, 759 (7th Cir.1994). This is exactly what happened when Boxall told Tormey he would receive

---

serves only as a defense to the state law claim and does not confer federal question jurisdiction.

*Rice,* 65 F.3d at 640.

medical coverage. According to the applicable definition in the plan, Tormey's heart condition is a preexisting condition because he received medical treatment from Dr. Teplitz within the 90 day probationary period before becoming insured. Without Boxall's statement, Tormey would have had no reason to believe otherwise. "Though it is unfortunate that an insurance company's agent would lead a policy holder to believe [he] was covered when [he] was not, the policies underlying ERISA require a preference for written over oral contract terms." *Vershaw v. Northwestern Nat'l Life Ins. Co.*, 979 F.2d 557, 559 (7th Cir.1992).[10]

◼ In addition, Tormey has not shown the necessary elements of estoppel. A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts. *Loyola Univ. v. Humana Ins. Co.*, 996 F.2d 895, 902 (7th Cir.1993). Even assuming that Boxall told Tormey he was covered under the plan, there was still no knowing misrepresentation. Boxall made her statement on the basis of a false impression that Tormey was not receiving medical care. Although the parties' testimony conflicts as to what Boxall asked Tormey at the informational meeting, the dispute is immaterial because both parties agree that Tormey said he was not receiving medical care. In fact, however, Tormey was taking four daily heart medications that he had been prescribed by his treating cardiologist, Dr. Eric Teplitz. This surely constitutes medical care, especially in combination with Tormey's two visits to Dr. Teplitz that summer. As Boxall was unaware of

this pertinent detail of Tormey's medical history, she did not make a deliberate misrepresentation to him when she said he would be covered. Even if oral modifications to a covered plan could be the basis for an estoppel claim, Tormey has failed to show the necessary elements of estoppel.

### D. Decision to Deny Benefits

◼ Tormey also argues that defendant's motion for summary judgment should fail because General American incorrectly denied medical coverage based on the plan's preexisting condition clause. General American's plan states that the plan administrator "shall have discretionary authority, shall determine eligibility for benefits, construe the terms of the plan and resolve any disputes which may arise with regard to the rights of any persons under the terms of the plan." When a plan grants the plan administrator such discretionary authority, the Seventh Circuit reviews the administrator's decision under the arbitrary and capricious standard. *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 660 (7th Cir.1997) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989)). Under this deferential standard, the plan administrator's decision to deny benefits is reviewed only to determine whether it was "downright unreasonable." *Id.; see also Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994).

◼ General American based its decision to deny benefits on a statement from Tormey's cardiologist, Dr. Teplitz, disclosing that between June 1, 1995 and September 1, 1995 Plaintiff was taking, on a daily basis, four prescribed medications for his heart condition and that Dr. Teplitz examined him on June 7, 1995 and July 6, 1995. According to the Principal–Meyers plan,[11] a preexisting

---

**10.** Tormey also argues that General American should be estopped from invoking its preexisting condition clause, or in the alternative, that it waived its right to invoke the clause because sixteen invoices were sent to Tormey stating that various medical tests pertaining to his heart condition had been paid for. (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 10). *Vershaw* presents an analogous situation in which the court held that an insurance company is not liable for

medical expenses paid by mistake before discovering within a reasonable time that a beneficiary has a preexisting condition. *Vershaw*, 979 F.2d at 559–60.

**11.** The preexisting condition clause in the Principal–Meyers plan is the applicable definition because General American's plan replacement clause provided the insured the lesser of: (a) the benefits provided under General American's plan

condition is a sickness or injury for which a person was confined or received treatment or service in the 90 day period before becoming an insured. Tormey's heart problem qualifies as a preexisting condition using this definition. The purpose of Tormey's medications was to treat his heart condition. Similarly, his visits to Dr. Teplitz after his third heart attack were reasonably deemed "services" by the plan administrator. General American's decision to deny Tormey medical coverage was not arbitrary and capricious because it was based on a reasonable interpretation of the preexisting condition clause.

█ Even though General American's decision was not arbitrary and capricious, that decision might nonetheless require reconsideration if General American did not follow ERISA's procedure and notification requirements when it denied Tormey's claim for benefits. *See Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685 (7th Cir.1992) (reversing administrator's decision where flawed notification denied the claimant effective review). Section 1133 of ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for "full and fair review." [12] The regulations promulgated pursuant to the statute set forth with greater specificity what the initial notice of the claim must contain:

(1) the specific reason or reasons for the denial;

(2) specific reference to pertinent plan provisions on which the denial is based;

(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(4) appropriate information as to the steps to be taken if the participant or beneficiary

wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

█ The first denial letter General American sent to Tormey did not meet these standards. It merely stated that expenses incurred from Tormey's third heart attack would not be covered because he had a preexisting condition. This explanation fails to meet the requirements of subsection (1) of § 2560.503–1(f). Although General American correctly exercised its discretion in concluding that Tormey had a preexisting condition, it failed to specify in the denial letter the basis underlying that decision. For instance, a brief description of Dr. Teplitz' report would have sufficed. *See Donato,* 19 F.3d at 382. The core requirements of the regulations include informing the plan beneficiary of the evidence upon which the decisionmaker relied. *Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 534 (7th Cir.1986); *see also Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 392 (7th Cir.1983) (finding error where "[t]he 'reason' given for the denial is not a reason but a conclusion."). Since General American did not include any evidence explaining its decision, the first denial letter violated subsection (1) of the regulations.

General American's first denial letter also violated the second requirement of 29 C.F.R. § 2560.503–1(f) because it did not refer to the pertinent plan provision upon which the denial was based. The letter states that the diagnosis is a preexisting condition. Although there is a preexisting condition clause in the medical coverage plan, unless the denial letter identified that provision, the participant would not know what rule justified the administrator's decision. The result would be that the beneficiary would have no vehicle for contesting the decision. *See Wolfe,* 710 F.2d at 391 ("The . . . requirement of specify-

without the preexisting condition limitation, or (b) the benefits provided under the prior plan.

**12.** 29 U.S.C. § 1133 reads:

In accordance with regulations of the Secretary, every employee benefit plan shall-

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting

forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

ing the pertinent plan provision may be, in a particular case, essential for the participant to fully apprehend the reason for the denial and to know what deficiency in his application must be overcome.").[13] Therefore, we hold that the procedure outlined in § 1133 was not met when General American initially denied Tormey's claim.

"A decision to deny benefits under a plan covered by ERISA will be overturned when '(1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law.' " *Id.* at 393 (quoting *Peckham v. Board of Trustees,* 653 F.2d 424, 426 (10th Cir.1981)). General American made a significant procedural error on a question of law, erroneously interpreting and applying § 1133. *Id.* Although the decision to deny coverage was not "downright unreasonable," General American violated the regulations by not disclosing to Tormey any basis for their conclusion.

■■■ This conclusion is not yet the end of the inquiry, however, because the case law of the Seventh Circuit clearly establishes that substantial compliance with the regulations is sufficient. *Halpin,* 962 F.2d at 693–94. ERISA requires that the reason a claim has been denied be communicated to the claimant and that the plan administrator afford the claimant a "full and fair review." *Brehmer,* 114 F.3d at 662 (quoting 29 U.S.C. § 1133). The first denial letter does not pass this standard. However, the first denial letter in combination with the reviewing process and the second denial letter qualify as substantial compliance with the regulations.

As part of the reviewing process, an agent of General American gathered additional medical records, including Dr. Teplitz' office notes from Tormey's three previous visits and forwarded the information to General American's home office in St. Louis, Missouri. These records apparently disclosed Tormey's two previous heart attacks and other additional evidence regarding his heart condition. Based on this information, General American decided to uphold the decision denying him coverage. The second denial letter contained more explicit reasons as to why Tormey's third heart attack was not covered under the plan. General American had enough information to preclude their decision from being rendered arbitrary and capricious.

Moreover, the only remedy here is to provide Tormey with a more detailed account of the initial reasons for General American's denial of benefits. As Tormey has already received a full account of the reasons, it would be futile at this point to order such a remedy. *Halpin,* 962 F.2d at 694 n. 6 ("remand merely to require the [administrator] to send a more detailed letter would be a useless formality") (internal quotation marks omitted). Therefore, we hold that even though General American violated the procedural requirements of § 1133, it substantially complied with the regulations because it ultimately provided Tormey with a full and fair review of his claim.

## CONCLUSION

For the foregoing reasons, General American's motion for summary judgment is granted. While this Court is sympathetic to the medical afflictions of Mr. Tormey, we cannot conclude, under the current state of ERISA law, that a reasonable jury could return a verdict in his favor. The Clerk of the Court is therefore directed to enter judgment pursuant to Fed.R.Civ.P. 58, in favor of defendant and against the plaintiff.

---

**13.** Incidentally, the denial letter also violates subsection (3) of 29 C.F.R. § 2560.503–1(f) because it does not describe the additional material or information necessary to perfect a claim. However, under *Brehmer v. Inland Steel Indus. Pension Plan,* 114 F.3d 656 (7th Cir.1997), subsection (3) does not apply because General American needed no additional information to reach its determination that Tormey had a preexisting condition, and Tormey has not presented any evidence that would rebut General American's decision. *Id.* at 661.