ALLIANCE GENERAL INSURANCE COMPANY

v.

LOUISIANA SHERIFF'S AUTOMOBILE RISK PROGRAM and the Louisiana Sheriff's Association, Inc.

Civil Action No. 96–0961.

United States District Court,
E.D. Louisiana.

May 28, 1999.

Richard B. Eason, II, Joseph W. Looney, Paul Gregg Pastorek, Adams & Reese, New Orleans, LA, for plaintiff.

Leonard Louis Levenson, Zara Lyn Zeringue, Weigand & Levenson, New Orleans, LA, Thomas Allen Usry, John F. Weeks, II, Usry & Weeks, Metairie, LA for defendants.

Daniel E. Becnel, Jr., Reserve, LA, for Phyllis Clark.

Darryl Jude Tschirn, La Jolla, CA, for Barell Billiot.

Joseph J. Weigand, Jr., William F. Dowd, Weigand & Dodd, Houma, LA for third party plaintiff Larpenter.

James R. Lewis, Verne Thomas Clark, Jr., Crawford & Lewis, Baton Rouge, LA, for Mor-Tem Risk Management Services, Mor-Tem Systems, Amerisafe, and Morris Temple & Co.

Elton Ford Duncan, III, Duncan & Courington, New Orleans, LA, for Hunt Insurance Group.

John C. Combe, Sr., James E. Wright, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for U S Risk.

John Powers Wolf, III, Nancy B. Gilbert, Keogh, Cox & Wilson, Baton Rouge, LA, for Southern Underwriters.

PORTEOUS, District Judge.

Before this Court are Motions for Summary Judgment by the Louisiana Sheriffs Automobile Risk Program, various sheriffs, Hunt Insurance Group, Inc., U.S. Risk, Morris Temple & Company, Inc, Mor–Tem Risk Management Services, Inc., Mor–Tem Systems, Inc., Amerisafe, and Southern Underwriters which came for hearing by oral arguments on a previous date. The Court, having reviewed the record, the memoranda submitted by the parties, the exhibits and the applicable law is fully advised of the premises of this case and is ready to rule.

### ORDER AND REASONS

### I. BACKGROUND

This suit arises out of a complaint filed by Alliance General Insurance Company ("Alliance") against the Louisiana Sheriff's Association ("LSA"), the Louisiana Sheriff's Automobile Risk Program ("LASHARP") and various sheriffs [1] for rescission of certain excess automobile liability insurance policies ("excess policies") or, alternatively, damages. LSA, LASHARP, and

---

1. On August 15, 1997 this Court ordered plaintiff to amend its complaint to join all "named insureds" to include the sheriffs that were members of LASHARP. The sheriff members, named individually in their official capacities, include: Guffey Pattison of Sabine Parish, Dennis Warwick of LaSalle Parish, I.F. "Jeff" Hingle of Plaquemines Parish, Wayne F. McElveen of Calcasieu Parish, Kenneth Gross of Acadia Parish, Buddy Huckaby of Vernon Parish, Gregory Champagne of St. Charles Parish, Raymond Lamarie Vermillion Parish, Charles Fusilier of St. Martin Parish, Boyd Durr Natchitoches Parish, Laymon Godwin of Ouachita Parish, Bob Buckley of Union Parish, Willey Martin, Jr. of St. James Parish, Lorell Graham of Richland Parish,

T.R. Maglones of East Feliciana Parish, Jack Stevens of St. Bernard Parish, Merline Tunes of St. Helena Parish, M. Boliver Bishop of Beauregard Parish, Hugh B. Bennett, Jr. of DeSoto Parish, David Naquin of St. Mary Parish, James E. Jordan of Winn Parish, Van Beasley of Jackson Parish, Jeff Willey of Ascension Parish, Hal Turner of Allen Parish, Jerry J. Larpenter of Terrebonne Parish and Rodney Strain of St. Tammany Parish. Several sheriffs have been dismissed from this suit, with only the sheriffs of Allen, Ascension, Calcasieu, East Feleciana, Natchitoches, Ouachita, Plaquemines, Richland, St. Bernard, St. Helena, St. James, and St. Mary Parishes remaining and will be collectively referred to as "sheriffs."

sheriffs in turn filed third-party demands against Hunt Insurance Group, Inc. ("Hunt"), U.S. Risk, Morris Temple & Company, Inc, Mor–Tem Risk Management Services, Inc., Mor–Tem Systems, Inc. (collectively "Mor–Tem"), Amerisafe, and Southern Underwriters.

Alliance issued the policies for the coverage years July 1992—July 1993 (Policy Number XLO–001360), July 1993—July 1994 (Policy Number XLO–001372), and July 1994—July 1995 (Policy Number XLO–001379). The "Declaration" page of each policy indicates that the "named insured" is LASHARP.

These policies provide excess automobile liability insurance coverage to named insureds, as defined by the policies, during specific periods. According to the policies, primary coverage is provided by LASHARP, which is a self-insured risk management agency created in 1989 by Hunt. From the inception of LASHARP until September 20, 1993, all excess automobile policies, including the 1992—1993 and 1993—1994 policies in the instant litigation, were procured by Hunt acting in conjunction with U.S. Risk. Additionally, Hunt, as a third-party administrator, managed and adjusted all automobile claims for LASHARP members. On September 20, 1993, Mor–Tem began to serve as the third-party administrator for LASHARP, therefore, being involved in insurance procurement activities for the 1994—1995 policy only.

Hunt established certain reporting requirements for the sheriffs to follow. (Hunt Depo., pp. 80–81) The sheriffs would report to Hunt and then Hunt would either report directly to the excess carrier or to U.S. Risk who would then report to the excess carrier. *Id,* (Doc. 624). Hunt required the sheriffs to report everything that occurred as it occurred, wether it was an actual claim or not, as soon as possible. (Hunt Depo., pp. 80–81). Additionally, the sheriffs were required to report any major accidents and/or major injuries within twenty-four hours of occurrence. *Id.* The sheriffs were not apprised of the excess carrier's reporting requirements because they did not ever report directly to the excess carrier and, in addition, Hunt's requirements were more stringent. *Id* at 82. The sheriffs continued to follow these same general reporting requirements when Mor–Tem replaced Hunt as the third-party administrator (Doc. 624).

Alliance bases its complaint on the defendants' (1) alleged failure to disclose all facts which were important in Alliance's determination of issuing the policies of insurance; (2) alleged failure to disclose certain claims which had been asserted against them prior to their applying for insurance coverage; (3) alleged inadequate claims reporting; and (4) alleged intentional suppression of undisclosed claims to gain unjust advantage over Alliance. LASHARP, LSA, and sheriffs brought the third party suits. During oral argument on May 12, 1999 this Court dismissed LSA from the suit, leaving Alliance with claims against LASHARP and the sheriffs only.

## II. *LEGAL ANALYSIS*

### A. *Law on summary judgment*

"[J]udgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there are any issues of material fact, the court must first consult the applicable substantive law to ascertain what factual issues are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Having done that, the court must review the evidence bearing on those issues, viewing the facts and inferences therefrom in the light most favorable to the nonmoving party. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

Initially, the moving party bears the burden of establishing that there are no genuine issues of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To satisfy this burden, the moving party may either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). The court does not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Little*, 37 F.3d at 1075.

If the moving party fails to meet this initial burden the motion must be denied regardless of the nonmovant's response; however, if the movant does meet this burden, the burden shifts to the nonmoving party to go beyond the pleadings and designate specific facts and competent summary judgment evidence sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If the nonmoving party fails to meet this burden,

the motion for summary judgment must be granted. As the Supreme Court has said, if a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

## B. *Alliance's Claims*

### (1) *LASHARP's and the Sheriffs' Breach of Duty*

#### a. *La.R.S. 22:619(A)*

Alliance asserts that LASHARP and the sheriffs suppressed material information regarding their loss history to obtain an unjust advantage over Alliance when applying for the initial excess policy as well as the two renewal policies. Alliance further asserts that had it known of the risk it would not have issued either the initial or the renewal policies and therefore, under La.R.S. 22:619(A), all policies should be rescinded. LASHARP and the sheriffs claim that they had no direct contact with Alliance because their duty to report extended only to their agents, Hunt and Mor–Tem, and that duty was fulfilled.

La.R.S. 22:619(A) provides, in pertinent part: "... no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." Intent can be determined from surrounding circumstances that indicate the insured knew of his misrepresentations and was aware that they were material. *Viada, Sr. v. Blue Cross of La.*, 524 So.2d 101, 104 (La.App. 4 Cir.1988).

Recently in *North American Capacity Ins. Co. v. Brister's Thunder Karts, Inc.*, Judge McNamara faced a strikingly similar set of facts. 1998 WL 259966 (E.D.La.). In *Brister*, a go kart manufac-

turer sought product liability insurance through an insurance agent, Palomar Insurance Corporation, which shopped the necessary excess risk coverage to several brokers. *Id.* The owner provided pertinent information, including loss runs for the prior five years, to Palomar but inadvertently excluded two lawsuits from the named period. *Id.* North American Capacity Insurance Company accepted the risk and six months later was served with a lawsuit subject to retroactive coverage and subsequently became aware of additional claims against Brister of which it lacked knowledge at the time of underwriting the risk. *Id.* at *2. North American filed suit to void *ab initio* its product liability coverage of Brister's Thunder Karts, claiming it would not have underwritten the risk had it known of the other claims against and losses incurred by Brister's *Id.*

In a summary judgment opinion, Judge McNamara found that there was no direct contact between the insured (Brister) and the insurer (North American) because Brister supplied all relevant information to its agent who informed the broker who in turn reported to North American. *Id.* at *6. While it alleged that Brister intended to deceive, North American offered no evidence to support that allegation. However, the defendants in *Brister* countered the plaintiff's allegations with testimony and documents which satisfied the court that any omission was made without the intent to deceive. *Id.* at *6. The court further noted that North American had the ultimate responsibility to explore any discrepancies in the application documents, had the resources and knowledge to investigate a questionable insurable risk, and could not hold others responsible for a bad business decision. *Id.* at 6.

■ LASHARP and the sheriffs had a "shopping" system similar to the insured in *Brister.* Individual sheriffs would report to a third-party administrator, either Hunt or Mor–Tem, who would in turn provided the information to a broker,

U.S.Risk. (Doc. 566, Exhibit X, pp. 4–5), (Hunt Depo., pp. 80–82.) Like North American, Alliance has offered no evidence to support its assertions of intentional misrepresentation, while LASHARP and the sheriffs have produced testimony and documents that rebut Alliance's assertion. (Rahn Depo., pp. 186–188). (Doc 628, Ex. J). In fact, the Court finds it illuminating and instructive that none of the third party defendants filed any counter claims against LSA, LASHARP, or the sheriffs asserting that the third party plaintiffs withheld information or intentionally mislead the third party defendants. The lack of such suits leads this Court to firmly believe that LASHARP and the sheriffs met their duty to report to the third party administrators and thus to Alliance.

Finally, Alliance had actual notice in U.S. Risk's submission on behalf of LASHARP that the prior excess carrier, Evanston, did not to renew the policy because of adverse loss experience. *Id.* Alliance, like the insurer in *Brister,* had the resources and knowledge to investigate a questionable insurable risk and like North American, should not be able to hold others responsible for a bad business decision.

Alliance, in an opposition to Hunt's Motion for Summary Judgment, tried to distinguish *Brister* from the facts of this case. Alliance claims because Judge McNamara found that there was a "plausible explanation [that] did not support the finding of deceit . . ." and because the letter of omission was not intended for North American that *Brister* is not instructive. The Court disagrees. If anything, Alliance's case is stronger than Brister's. Mr. Brister offered no explanation other than "inadvertence." *Brister,* at n. 7. Here, of the four major "omissions"[2] that would have been the deal-breakers for Alliance, two were included in a June 19, 1992 letter from Mac Wesson of U.S. Risk to John Pritchett of Alliance (Doc. 628, Exs.I, G) and the other two claims had yet to be reported to the previous excess carrier (Doc. 628).

---

**2.** Those four claims are: Sieffert, Pitre, Freeman, and Bourque.

The Sheriffs and LASHARP did not withhold information intentionally and did not omit pertinent information in the negotiation of its excess insurance policy that would have prevented Alliance from underwriting the risk.

#### b. *Waiver of Privilege*

 Even if there had been an intentional misrepresentation or breach of duty by LASHARP and/or the sheriffs, rescission of all of the excess policies would still be improper based on Alliance's waiver of that privilege. *See, Swain on Behalf of Estate of Swain v. Life Ins. Co. of La.,* 537 So.2d 1297, 1300 (La.App.1989), *citing,* comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202 (1962). Under Louisiana Insurance Law, when an insurer accepts premium payments after receiving information which creates a privilege of forfeiture the insurer waives that privilege. *Swain,* 537 So.2d at 1302. This has been the recognized law since the turn of the century by both the Louisiana Supreme Court and the United States Supreme Court. *Home Ins. Co. v. J. Matthews,* 998 F.2d 305 (5th Cir.1993) *citing Union Nat'l Bank v. Manhattan Life Ins. Co.,* 52 La.Ann. 36, 26 So. 800 (La.1898); *Phoenix Mut. Life Ins. Co. v. Raddin,* 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644 (1887). Failure to investigate after receipt of information that imposes a duty to investigate further also constitutes a waiver of all privileges that would have been discovered. *Swain,* 537 So.2d at 1302.

Assuming *arguendo* that Alliance had a privilege to rescind each excess policy, it waived that privilege by renewing and then accepting premium payments on each new excess policy. Alliance claims that it would not have accepted the LASHARP policy for the 1992–1993 coverage year had it known of certain claims. However, Alliance learned of those claims prior to renewing the 1993–1994 policy yet renewed for that year, the following year, and would have renewed for 1995–1996. (Rahn depo. p. 203–206). By continuing to renew LASHARP's excess policy, Alliance waived

any right it may have had to rescind those policies.

#### c. *Fed.R.Civ.P. 9(b)*

Alliance, in oral argument on May 12, 1999 represented that LASHARP and the sheriff's "omissions" may lead to a question of fraud. Although the submitted 62 paragraph Second Amended Complaint does not plead "fraud" specifically and in fact dances around the issue in every conceivable way, the Court feels that in an abundance of caution the issue needs to be addressed because Alliance mentions fraud in memoranda to the court.

 The case at bar is in federal court solely because of diversity jurisdiction, therefore, federal procedural law shall be applied and state substantive law shall be applied to the merits of the case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Alliance alleges misrepresentation, suppression of information and intent to deceive on the part of LASHARP and the sheriffs, but does not specifically allege fraud. (Doc. 1, Plaintiff's Complaint). However, according to La.C.C. art. 1953: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Fed.R.Civ.P. 9(b) provides, in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A higher standard is necessary to protect the defendant's reputation from unsubstantiated allegations of fraud. *J. Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992).

In *Texaco v. Roberts, et al.,* defendant moved to dismiss count four from the plaintiff's complaint because the plaintiff merely stated conclusory allegations of fraud without setting forth facts to support the claim, thus, according to defendant fraud was insufficiently plead. *1990 WL 58137* (E.D.La.). Texaco argued that

though the claim may not have been plead with particularity, plaintiff should be allowed to amend rather than suffering a dismissal. *Id.* In denying the motion, Judge Sear opined that the complaint was "replete with specific allegations of wrongdoing by the defendants" to give notice in order to prepare a responsive pleading and that the discovery process would produce more details. *Id.*

█ The above case is distinguishable from the instant litigation because the discovery process is long over and has not and will not reveal evidence of fraud. Further, in its original 33 paragraph complaint Alliance stated only conclusory allegations of misconduct defined as misrepresentation by the applicable Louisiana substantive law, but failed to plead fraud with particularity as required by Fed. R.Civ.P. 9(b). The Fifth Circuit has never expressed specific requirements of Fed. R.Civ.P. 9(b) because what constitutes "particularity" will differ in each case based on the facts. *Guidry,* 954 F.2d at 288. Fraud allegations that did not state time, place, circumstances, or content of alleged misrepresentations were held to have failed to satisfy the requirements of Fed.R.Civ.P. 9(b) in *Guidry,* 954 F.2d 278. Likewise, Alliance merely alleges that LASHARP and the sheriffs failed to disclose certain claims and intentionally suppressed those claims to obtain an unjust advantage without providing detailed information. (Doc. 1, Plaintiff's Complaint).

There is no evidence of defendants' intent to deceive the plaintiff. There was no direct contact between LASHARP or the sheriffs and Alliance. The sheriffs supplied all relevant information to the third party administrators, which informed U.S. Risk, which in turn informed Alliance. Plaintiff is not a victim, innocent of the ways of the insurance world and cannot convince this Court that it was lured into a bad deal. There plaintiff simply made a bad business decision and now seeks to hold its insureds responsible for its own bad choices. There is no evidence of intentional misrepresentation or suppression of material information by LASHARP or the sheriffs and consequently, there was no breach of duty to Alliance.

*(2) Error*

a. *La.C.C.art.1948 et. seq.*

█ Alliance alternatively argues that if LASHARP and the sheriffs did not suppress material facts then the policies were issued in error and therefore, should be rescinded. La.C.C. art.1948 reads: "Consent may be vitiated by error, fraud, or duress." La.C.C. art.1949 provides: "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." Jurisprudence establishes that when there is a unilateral error as to fact which was the principal cause of the contract and the other party knew or should have known it was the principal cause then the contract may be rescinded. *Savoie v. Bills,* 317 So.2d 249 (La.App. 3 Cir.1975).

In *Thibodeaux v. American Land & Exploration, Inc.* plaintiff's failure to show that defendant had knowledge of alleged error precluded rescission of a royalty deed. 450 So.2d 990 (La.App. 3 Cir.1984). In *Thibodeaux,* plaintiff mistakenly transferred one-half of his royalty interest in a 20 acre tract of land when he thought that he was transferring only one-fourth. The court cited the law of unilateral error as support for its finding that even if plaintiff did not understand what he was transferring, he must show that defendant was aware of that ignorance in order to rescind the deed. The court further observed that the plaintiff had adequate experience in calculating royalty acres so as not to be able to plead ignorance. *Thibodeaux,* 450 So.2d at 994. Plaintiff did not meet his burden and defendant prevailed.

█ Alliance claims that it mistakenly issued excess policies to LASHARP and the sheriffs based on unilateral error regarding loss history. However, much like

the plaintiff in *Thibodeaux*, Alliance has failed to show that either LASHARP or the sheriffs were aware of the alleged error. In fact, ample testimony evidences that LASHARP and the sheriffs fulfilled their reporting duty and Hunt, Mor–Tem or U.S. Risk were responsible for the transfer of information to Alliance. (Doc. 566, Exhibit X, pp. 4–5), (Hunt Depo., pg. 83.) Additionally, Alliance possessed experience as an excess insurer to obligate itself to investigate further when it learned that LASHARP's prior excess carrier did not renew due to adverse loss experience. (Doc. 628, Exhibit J). Alliance cannot demonstrate that LASHARP or the sheriffs knew of Alliance's error and to allow Alliance to plead ignorance would unfairly injure the interests of the defendants. Thus, unilateral error will not permit the policies to be rescinded.

*(3) Breach of Contract*

a. *La.C.C. art. 3499*

■ Finally, Alliance argues that if the policies cannot be rescinded then they should receive damages due to LASHARP's and the sheriffs' alleged breach of contract for failure to timely notify them of adverse claims as stipulated in the policies. (Doc. 624, Exhibit A, pg. 3). The coverage at issue is occurrence based coverage and not claims made coverage, therefore claims may be brought long after the effective dates of the policies in question simply due to the nature of the coverage provided. (Doc. 625, ex. F). Under the contract the insured was required to give notice of an occurrence as soon as practicable. *Id.* As explained above, Sheriffs would report occurrences to the third party administrators, which would report to the broker or to Alliance.

■ Again, the evidence is not present to prove Alliance's claim. The third party administrators have not complained or alleged that LASHARP or sheriffs failed to timely notify them of occurrences. While there may be some gaps between the time the third party administrators received notice of the occurrence and when Alliance

received notice, it does not necessarily indicate a breach of contract and certainly does not implicate defendants. Additionally, because Alliance continued to accept premium payments after receiving information which may have created a privilege of forfeiture, it waived whatever rights it may have established. *See, Swain,* 537 So.2d at 1302. Moreover, Alliance did not fulfill its duty to investigate once it questioned the policies, consequently losing the privilege to assert a claim. *Id.* LASHARP and sheriffs did not breach the contract with Alliance, but had there been such a breach Alliance waived the privilege to pursue it.

b. *"Actual Prejudice"*

■ Had there been a breach of contract, Alliance would need to show actual prejudice. Under Louisiana Law, an insurer cannot deny coverage simply because the insured did not give timely notice of the loss. *Peavey Co. v. M/V ANPA,* 971 F.2d 1168, 1172 (5th Cir.1992). An insurer must show "actual prejudice" to deny coverage of a claim based on late notice. *Peavey Co.,* 971 F.2d at 1172.

Alliance claims that "actual prejudice" is irrelevant because its complaint is based on a pattern of late reporting and not on denial of individual claims. This Court finds such an assertion questionable. It stands to reason that the standard used to deny coverage of one claim would apply to an effort to deny all claims, which would be the ultimate result of rescission.

Nonetheless, Alliance is still without a viable suit. Once again, the fact that Alliance continued its business relationship with the defendants though suspecting them of nefarious conduct waives any privilege that Alliance had against its insureds.

C. *LASHARP's and Sheriff's Claims*

*(1) Tort and Indemnity against Hunt, Mor–Tem, U.S. Risk, and Southern Underwriters*

a. *La.R.S. 9:5606(A)*

Any third-party claims that LASHARP and the sheriffs may have against the

third-party defendants are moot based on the granting of summary judgment in favor of LASHARP and the sheriffs. However, in the interest of judicial fairness and efficiency the Court would like to address those claims and the fact that they would have been prescribed.

█ La.R.S. 9:5606(A) reads, in pertinent part: "No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." Using this statute as a guide, the Supreme Court of Louisiana held that the one year prescriptive period for torts against an insurance agent applied to third-party actions as well as principal actions in *Roger v. J. Dufrene*, 613 So.2d 947 (La.1993).[3] Hunt, Mor-Tem, U.S.Risk, and Southern Underwriters are considered agents and/or brokers within the meaning of the statute per the following applicable Louisiana Insurance Code Definitions:

"'Insurance agent' shall mean a person appointed in writing by an insurer to solicit applications for a policy of insurance or to negotiate a policy of insurance on its behalf. A person not duly licensed as an agent, insurance broker, or surplus lines broker, who solicits a policy of insurance on behalf of the insurer, shall be an insurance agent within the definition herein ..." La.R.S. 22:1112(1)

"'Insurance broker' shall mean any person who, for compensation, acts or aids in any manner in negotiating contracts for insurance or placing risks or effecting insurance for a party other than himself or itself. A person not duly licensed as an insurance broker or sur-

plus lines broker who solicits a policy of insurance on behalf of others or transmits for others an application for a policy of insurance to or from an insurance company, or offers or assumes to act in the negotiations of such insurance, shall be an insurance broker within the definition herein." La.R.S. 22:1112(2)

Therefore, because La.R.S. 9:5606 applies to all of the third-party defendants, a one year prescriptive period applies to all claims against them for either tort or breach of contract.

Alliance's claims against LASHARP and sheriffs are based upon a pattern of late reporting, as opposed to seeking to avoid coverage of any individual particular claims. In turn, LASHARP's and the sheriffs' third party complaint against the third party defendants is, by its very nature, likewise founded. In a subsequent summary judgment opinion to the one cited *supra*, Judge McNamara dismissed tort actions against an insurance agent due to prescription of the claim under La.R.S. 9:5606 in *North American Capacity Ins. Co. v. Brister's Thunder Karts, Inc.*, 1998 WL 351847 (E.D.La.). In that opinion, the court discussed two applicable prescription dates for the one policy as the date coverage was bound and the date the plaintiff received information regarding unreported losses.

█ Considering that Alliance, and in turn LASHARP and sheriffs via indemnity, is seeking rescission of three complete policies, the only applicable prescriptive date would be the date that the last policy became effective because Alliance was apprised of the pattern of unreported losses before any policies were renewed. Therefore, July 1994 would be the applicable date and because suit was not filed until March of 1996, prescription had already run on Alliance's alleged pattern of late reporting claims.

---

**3.** La.R.S. 9:5606 was not applied in *Roger*, 613 So.2d 947 because the cause of action arose before the effective date of the statute.

721

### D. *Alliance's Motion to Amend*

Although Alliance filed a Motion to Amend the Complaint, the Court notes that based on the foregoing information regarding prescription and waiver the amendment is futile. All claims that Alliance may have against U.S. Risk Inc., R.L. Jarrett, Inc., R.L. Jarrett Risk Services, JarrettSpecialty, Hunt Insurance Group, Inc., Mor–Tem Risk Management Services, Inc., Morris Temple and Company, Inc., and Americsafe, Inc. are either prescribed or the privilege to challenge them has been waived.

Furthermore, the court previously stated why amendment to potentially plead fraud against the defendants, without specifically pleading same, is inappropriate at this late date.

### III. *CONCLUSION*

This ongoing and protracted litigation for the last three years has still not convinced the court, through voluminous discovery and document production, that Alliance's choice to insure the defendant's is anything other than a bad business decision.

Accordingly,

**IT IS ORDERED** that the defendants' LASHARP and various sheriffs Motion for Summary Judgment be, and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the third-party defendant Mor–Tem's Motion for Summary Judgment be, and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the third-party defendant Hunt's Motion for Summary Judgment be, and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the third-party defendant U.S.Risk's Motion for Summary Judgment be, and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the third-party defendant Southern Underwriters' Motion for Summary Judgment be, and the same is hereby **GRANTED.**